DAVID A. HALL, ASSIGNEE OF JOHN HOOVER, *vs.* THOMAS SEWELL.—*June 1850.*

Though the provisions of the bankrupt law of this country are different from the bankrupt law of *England*, yet here, equally strict proof of the assignee's title to sue is required.

The plaintiff, in proof of his title to sue in the courts of this State, as assignee of a bankrupt, and of his appointment as such assignee under the act of Congress of 1841, offered the proceedings of the circuit court of the *District of Columbia*, sitting in bankruptcy, upon the application of the bankrupt. HELD: That the courts of *Maryland* have a right to examine into the validity of these proceedings, and to judge of the sufficiency of such appointment.

Hall *vs.* Sewell.—1850.

The bankrupt law requires the assignee to give bond, and the same proof is required of his right to sue as assignee, as is required of a trustee of an insolvent debtor, appointed under our insolvent laws.

The appointment of the plaintiff as *general assignee* in bankruptcy, for the county of *Washington, D. C.*, is not such an appointment as is required by the act of Congress, to vest the property of the bankrupt in the plaintiff; and no proof being offered of his having given bond as special assignee, he cannot maintain this suit.

A judgment was obtained by the plaintiff upon default of the defendant to answer certain interrogatories filed by defendant, and a writ of inquiry ordered, Upon motion and affidavit of defendant's counsel, alleging surprise in obtaining this judgment, the court ordered it to be stricken out. HELD: that the power of the court to strike out this interlocutory decree or judgment, is given by the act of 1787, ch. 9, sec. 6.

Where a plaintiff has filed a bill of particulars, he must confine himself to it in his proof, and he cannot propose interrogatories, the answers to which do not relate to the matters in issue.

APPEAL from *Baltimore* county court.

This was an action of *assumpsit* brought to September term 1846, of Baltimore county court, by the appellant, who is styled in the declaration, "assignee in bankruptcy of *John Hoover*, under a decree of the circuit court of the *District* of *Columbia*," to recover certain moneys alleged to be due by the appellee to said *Hoover*, at the time of his bankruptcy, and which passed to the plaintiff as his assignee. At the same term the defendant appeared and pleaded *non assumpsit*, and the plaintiff, on motion of the defendant, was ruled to give security for costs by the second Monday of January then next, and to file a bill of particulars. The plaintiff gave security as required, and on the 23rd of March 1847, during the January term 1847, a bill of particulars was furnished charging the defendant with $50.000, in money, and proceeds of real and personal estate, received by him on the 12th of September 1842, from said *Hoover*, who conveyed the same to him in contemplation of bankruptcy, in order to conceal it from his creditors, the defendant not being a *bona fide* creditor of said *Hoover*.

On the 30th of March 1847, also during the January term 1847, the plaintiff filed his petition, called in the record a bill of discovery, requiring the defendant to answer on oath the

following interrogatories, which the court by its order of the same day, required him to do by the 30th of April then next.

1st. State whether on the day of *Hoover's* filing his petition in bankruptcy, in the district court of the *United States* for the *District* of *Columbia,* you were a *bona fide* and subsisting creditor of said *Hoover?* and if so, to what amount, and specify what securities or indemnities you held in any shape or form, and disclose the value of the same and what has been realized therefrom, directly or indirectly, since said securities came into your control or use.

2nd. Did *Hoover* previous to his bankruptcy, or petition in bankruptcy, execute to you his several notes, in all for the sum of $35,000? and if so, state the date of said notes, the amount of each, and when each was payable, and further state how many of said notes, if any, were paid before his said petition, and especially state the actual and real consideration for said notes, and whether the same was *bona fide*.

3rd. Specify particularly each and every item of property, real, personal and mixed, which you have at any time since the 1st January 1842, held, possessed, controlled or claimed by gift, grant, sale, transfer or otherwise, from *Hoover*, with the value of the same, and the amount of proceeds if any part has been sold.

4th. State the amount of moneys, or valuable securities, at any time since the first of January 1840, placed in your hands, or control or custody by said *Hoover*, specifying as well as possible the date and amount of each deposit, transfer or arrangement, and for what real purposes as expressed and understood between you and said *Hoover*.

5th. State by what understanding, and under what real arrangement between you and said *Hoover*, each and every transaction referred to in the preceding interrogatories took place, and especially, what was the arrangement as to the right of said *Hoover* to draw moneys, or to sell or enjoy property placed by him in your possession, use or control, at any time as above stated in the aforegoing interrogatories.

6th. State fully and particularly each and every draft drawn

by said *Hoover* on you, and accepted or paid by you since the first day of September 1844, as well as since the date of his petition in bankruptcy, with the dates and amounts thereof. Also all sums of money paid or assumed by you, since said dates, for or on account of said *Hoover*.

7th. State whether you were not aware of the petition of said *Hoover* in bankruptcy, and if so, when you first heard of it, and also when you heard of his intention to petition under the bankrupt act ?

The cause was then continued from term to term until January term 1848, when, the interrogatories remaining unanswered, a judgment by default was rendered for the plaintiff, with an order for a writ of inquiry. Afterwards, on the 26th of January 1848, during the same term, *Reverdy Johnson* and *John Glenn* the counsel for the defendant, filed their affidavits alleging surprise in the obtention of this judgment, and praying that it might be stricken out. On the 31st of the same month, *Robert J. Brent*, counsel for the plaintiff, filed a counter affidavit justifying the course adopted by him, and denying all design to take undue advantage. These affidavits show that the counsel misunderstood each other in reference to certain verbal agreements made by them in regard to the case. The court on the 7th of February 1848, ordered the judgment to be struck out, and to this order the plaintiff took his *first* exception.

On the 8th of February 1848, the court at the instance of defendant, gave him further time to show cause why he should not answer the plaintiff's interrogatories. Under this leave the defendant assigned the following reasons for not answering. 1st. Because the same were not filed by the trial term as required by the act of 1801, ch. 74, and the act of 1831, ch. 64. 2nd. Because the same are not a bill of discovery, and the court sustained these objections, and ordered the previous order directing the defendants to answer to be rescinded. To this the plaintiff took his *second* exception.

The cause was then tried, and the plaintiff offered in evidence two transcripts, from the records of the circuit court of the *District of Columbia*, sitting in bankruptcy, for the purpose of proving his

appointment as assignee of *Hoover*, under the bankrupt law of Congress of the 19th of August 1841.    The first of these transcripts set forth.    1st.    The petition of *Hoover* for the benefit of the bankrupt law, with schedules of his creditors and property. The time of filing is not stated, though the affidavit to the petition was made on the 13th of April 1842.    2nd.    An order of the court appointing, the 5th of September 1841, for the hearing of the petition, and directing notice to creditors, with a certificate of the printer, that the notice had been duly published.    The date of this order is not given.    3rd.    The transcript then states that on the said 5th of September, no creditors appearing, "the court passed the following decree, and appointed *David A. Hall, Esq.*, assignee of said *John Hoover*, a bankrupt, who gave bond with surety approved by the court." Then follows a decree declaring said *Hoover* a bankrupt, within the act of Congress of 1841, dated 5th of September 1842, and made absolute the 12th of the same month.    4th.    A petition of *Hoover* for a certificate and discharge, stating that he has *bona fide* surrendered all his property for the benefit of his creditors, and on this petition an order of the court dated 12th of September 1842, appointing the 12th of December then next, for the hearing thereof, and directing notice thereof to creditors to be published, and the certificate of the printer, that said notice was duly published.    5th.    A report signed by *D. A. Hall*, assignee of *John Hoover*, a bankrupt, stating that said *Hoover* had *bona fide* transferred to him all his property as required by the bankrupt law, upon which the court passed a decree for his discharge and certificate, dated 12th of December 1842, and made absolute on the 19th of the same month. 6th.    A certificate of discharge, dated 19th of December 1842. 7th.    A certificate of the clerk of said court, duly attested, certifying that the "aforegoing is a full, true and perfect transcript, of all the proceedings had in the said court, in the said cause of *John Hoover*, a bankrupt, as appears from the minutes of the proceedings of the said court."

The *second* transcript set forth.    1st.    That *David A. Hall* is appointed general assignee in bankruptcy, "in and for *Wash-*

*ington* county *District of Columbia.*" 2nd. The bond of said *Hall* as such general assignee, in the penalty of $10,000, dated 22nd of February 1842, approved and recorded, 10th of March 1842. 3rd. A certificate dated 1st of October 1842, signed "*D. A. Hall* assignee of bankrupts," certifying that *John Hoover*, a bankrupt, had transferred to him all his property as set forth in his schedule, attached to his petition for the benefit of the bankrupt act. 4th. A decree of said court, dated 19th of December 1842, granting a discharge and certificate to said *John Hoover*, the same as in the preceding transcript. 5th. The certificate of the clerk of said court duly attested, that the appointment of said *Hall*, "as assignee in bankruptcy, in and for the county of *Washington*, in the *District* of *Columbia*, his bond to the *United States* as such assignee, his certificate in the matter of *John Hoover*, and the certificate and discharge of said *John Hoover*, are truly and correctly copied from the minutes of proceedings and records of the said court."

The court (LE GRAND, J.,) upon the defendant's prayer, instructed the jury that the above evidence was not sufficient proof of the appointment of the plaintiff as assignee of said *Hoover*, and that he could not therefore maintain this action. The plaintiff took his *third* exception, and the verdict and judgment being against him, appealed to this court.

The cause was argued before DORSEY, C. J., CHAMBERS, SPENCE, MAGRUDER, MARTIN and FRICK, J.

ROBERT J. BRENT and JOHN NELSON, for the appellant, insisted, that there was error, *first*, in striking out the judgment by default, and rescinding the order requiring answers to the interrogatories; and *second*, in collaterally impeaching and annulling the appointment of the plaintiff, by the circuit court as general assignee in bankruptcy, and in holding that there was no evidence of his appointment as assignee of *Hoover*. On the latter point they cited:

*Erwin vs. Lowry*, 7 *Howard*, 172. *Shriver vs. Lynn*, 2 *Howard*, 58, *McCormick vs. Sullivant*, 10 *Wheat.* 199. *Ra-*

*borg vs. Hammond,* 2 *H. & G.,* 42.   *Bowie vs. Jones,* 1 *Gill,* 214.  3 *G. & J.,* 189.  8 *G. & J.,* 346.  12 *G. & J.,* 177.

GLENN and R. JOHNSON for the appellee, contended:

1st.  That the interrogatories of the plaintiff constituted no such sufficient bill of discovery, as he had any lawful right to file, or to ask the defendant to answer.

2nd.  That the said interrogatories, even if they constituted a proper bill of discovery, should have been filed by January term, 1847, and were in fact filed too late to avail.

3rd.  That the court were right in striking out the judgment by default, both because of the facts stated in the affidavits and of the defects above alleged in reference to the said interrogatories; that they were also right, for the latter reasons, in rescinding the previous order to answer.

4th.  That no appeal lies from the order of the court, striking out the judgment by default.

5th.  That the two records, from the circuit court of *Washington,* do not separately, and cannot together, prove the proper and legal appointment of the plaintiff, as assignee of *Hoover,* or his having given bond, in such manner as to entitle him to sue as such assignee.

MAGRUDER, J., delivered the opinion of this court.

The point which arises in this case upon the last bill of exceptions, will first be disposed of.

The appellant, as the assignee of one *John Hoover,* a bankrupt, instituted this action in his own name, against the appellee, claiming sums of money alleged to be due from the appellee to the bankrupt, at the time of his application. Proof was offered of the claim, and of the proceedings, in the case of the bankrupt, and upon the evidence offered, the court at the instance of the appellee, instructed the jury, that it is not sufficient evidence of the appointment of the plaintiff, (appellant,) as assignee of *John Hoover,* and therefore the plaintiff could not maintain the action.   Did the court err in giving this instruction?

We are told in *2nd Maddock's Chancery Practice*, that in *England*, all the chancellor's jurisdiction in bankruptcy is derived from the legislature, it is a statutory jurisdiction, and begins and ends in acts of Parliament. In *2nd Philips on Evidence, p.* 319, (*Cowen's edition,*) we learn what proof must be offered by the assignees of a bankrupt, if their title be not admitted. The provisions of our statute of bankruptcy, are very different from those of the bankrupt law in *England.* In this country, however, proof, equally strict, of his title to sue, is required.

The plaintiff below, in proof of his title to recover in his own name, money alleged to be due by the defendant below to the bankrupt, offered in proof the proceedings which took place in the circuit court of the *District of Columbia,* upon the application of the bankrupt. It is objected, that these proceedings do not authorise the suit. One answer given to this is, that it is not competent for a court of *Maryland,* "not invested with appellate powers," to revise or question, the correctness of the circuit court; that the proceedings show the appointment of a trustee by that court, and what was done by him and the court in consequence of said application; these proceedings it must be presumed here, are correct. This is sometimes true, but not when the court is exercising the power conferred by the bankrupt law. It is possible, indeed, that the courts of the different States, will differ in their interpretation of some of the provisions of this act of *Congress,* each being governed by its own interpretation of its bankrupt or insolvent laws.

The bankrupt law, like our insolvent law, requires the trustee to give bond, and it is presumed that the same proof will be required of an assignee of a bankrupt, suing as assignee, that is required here of the trustee of an insolvent, appointed by our own judicial tribunals. In the case of *Winchester, trustee, vs. The Union Bank,* 2 *G. & J.,* 73, we are told what proof is required of a trustee of an insolvent applicant, claiming a right to sue in that character. He must give bond, and so the assignee of a bankrupt is required

20    v. 9

to give bond, with at least two sureties, in such sum as the court may deem proper; and this, and every other requisite of the act of Congress, must be complied with, before he can sue in that capacity.

It was attempted in this case to show, that the appellant did give bond, and for this purpose two, (not corresponding) copies of the proceedings of the circuit court, were offered in evidence. The one shows that, previously to this application, he had been appointed a general assignee in bankruptcy, and had given bond faithfully to discharge his duties as such. It is thought that this is not such an appointment, as divests out of the bankrupt his property, and vests it in the assignee "appointed from time to time by the proper court."

Of this opinion, indeed, the circuit court seems to have been, for one of the records shows, that the general assignee was also appointed the assignee of *Hoover.* The special assignee, however, does not appear ever to have given the bond which the act of Congress requires.

When the assignee thus appointed claims and would exercise the right of suing in our courts, they must judge, whether in any such character, he has a right to maintain an action in them.

But there are two other exceptions of which we will now dispose. An application, by petition, had been made to the county court, to require the defendant below to answer certain interrogatories then submitted, and on the 30th March, 1847, it was ordered that the defendant answer them, on or before the 30th of April then next. On the second Monday of January, 1840, a judgment, or decree is obtained, because the interrogatories are not answered, and thereupon, the record tells us, let a jury come to inquire what damages the plaintiff hath sustained. We will not stop to inquire whether this is the course authorised by the act of Assembly?

During the same term, the attorney for the defendant filed in court affidavits, and one was filed by the attorney for the plaintiff, and upon motion, the judgment spoken of, was, by

Hall *vs.* Sewell.—1850.

order of the court, stricken out. Because of this an exception was taken by the plaintiff.

The power of the court to strike out this interlocutory decree or judgment, will be seen by a reference to the act of 1787, chap. 9, sec. 6. Upon the affidavits filed, in connection with this motion, we shall only remark, that they show the necessity, in all such cases, that counsel reduce their agreements to writing. It cannot be doubted that each of the gentlemen misunderstood the other, and hence the surprise. See upon the subject of striking out judgments, 2 *H. & G.*, 374 *and* 379. See, also, in *Palmer and Hamilton vs. Oliver*, 11 *G. & J.*, 137, some remarks pertinent to applications of this description : " Judgments at law," said the court, 2 *H. & G.*, 378, "are not lightly to be interfered with, and it must be a case infinitely stronger than the present, to induce this court to sanction the striking out a judgment of almost eight years standing."

In the case before us, the motion was to strike out an interlocutory judgment, and made too the very term that the judgment was entered. It is not usual to refuse such motions.

But the court also rescinded the order which had been passed, and thereby dispensed with all answer to the interrogatories which the defendant below had been required to answer. Of this can the appellant complain in this court ? The plaintiff had been required to furnish, and had furnished, a bill of particulars. To this he must confine himself in his proof, and cannot propose questions, the answers to which do not relate to the matters in issue. It is thought that this last order of the court, furnishes the plaintiff with no ground for reversing the judgment.

JUDGMENT AFFIRMED, WITH COSTS.