J. B. WITHERS, ADMINISTRATOR, ETC., APPELLANT,
vs. W. S. SANDLIN, APPELLEE.

| 36 | 619 |
| 40 | 246 |
| 36 | 619 |
| 44 | 255 |
| 45 | 634 |
| 46 | 217 |
| 46 | 329 |

1. An objection that evidence offered is "not proper testimony for the jury," is too vague and indefinite. In order to review in an appellate court objections to the admissions of testimony overruled in the court below, the specific grounds of the objection should be stated.

2. The defendant offered in evidence a receipt for a payment upon the claim sued upon, given nearly two months after the filing of the pleas upon which issue was taken. The Circuit Court excluded the receipt : *Held*, Not to be error, for the reason that there was no issue in the case to which the evidence was applicable. The pleas in the case, not stating whether the defenses plead arose before or after the action begun, according to our statute, must be deemed pleas of matters arising before action brought (sec. 45, p. 823, McClellan's Digest; sec. 1066, Rev. Stat.), and under such pleas evidence of defenses arising after action brought are inadmissible.

3. A payment to an assignor who has assigned all his right and demand in the claim with the knowledge of the defendant making the payment, and without authority of the assignee, does not affect any right of assignee. That such assignment was a collateral security, instead of being absolute, does not alter the case.

4. The evidence offered in a case must be confined to the bill of particulars, and the plaintiff can not prove items not mentioned therein. If the plaintiff desires to offer proof as to other items than those included in the bill of particulars, he should be required to amend the same.

5. The evidence in the case considered, from which it appears that the verdict was clearly excessive, and too loose and uncertain to support the verdict.

6. By the terms of an assignment, one Carter assigned to the plaintiff the account sued upon, "with full power to collect the same by suit or otherwise, as fully as" he (Carter) himself "could or would have done." In evidence it appeared that the plaintiff held the claim as a collateral security for an indebtedness of Carter to him; that by the agreement between them he was to take the account, collect it in any manner he chose, pay himself the expenses of collection out of the proceeds, and the residue, if any, to Carter, with full power in the plaintiff to control the account and to settle it up in any manner that suited him. Upon this state of facts: *Held*, That the legal title to the claim sued upon was in the plaintiff, and that he was such a real party in interest as could maintain the action under our statute (sec. 1, Chap. 3241, acts of 1881; sec. 72, p. 829, McClellan's Digest; sec 961, Rev. Stat.)

Appeal from the Circuit Court for Hamilton county.

The facts in the case are stated in the opinion of the court.

*Stewart & Roberson*, for Appellant.

*B. B. Blackwell* and *D. B. Johnson*, for Appellee.

LIDDON, J.:

The appellee, plaintiff below, brought suit against the appellant, defendant below, upon a claim assigned to him (appellee) by one I. T. Carter. This claim was an account of said Carter against E. J. Baker deceased, the intestate of the appellant, and was attached to the declaration as a bill of particulars, and was as follows:

E. J. BAKER TO I. T. CARTER             DR.

Sept. 15, 1888.

|  |  |
|---|---|
| Surveying and locating fifty lots of lands in Echols county, Ga. | $2,750.00 |
| To 5 months' services rendered E. J. Baker, ending November 23, 1888 | 125.00 |
| Total | $2,875.00 |
| Received on the within claim five hundred and seventy-two 78-100 dollars, October 3, 1890 | $572.78 |
| Balance due | $2,302.22 |

The declaration contained the usual common counts. The defendant plead several pleas, all of which were equivalent to a plea of never was indebted upon the part of the appellant's intestate. Upon trial verdict and judgment were rendered against defendant for $2,000 and costs, from which defendant appealed. Several assignments of error were made. We consider all of them that are argued and appear necessary to a disposition of the case, or to guide the court upon a new trial.

Upon the trial the plaintiff offered some evidence which was objected to by defendant upon the ground

that it was "not proper testimony for the jury." The court overruled the objection. We do not think any grounds of objection were stated so as to require us to review this ruling. The mere objection that the evidence was not proper, is too vague and indefinite, and without weight before an appellate court. In order to review in an appellate court objections to the admission of testimony overruled in the court below, the specific grounds of the objection should be stated. Gladden vs. State, 12 Fla. 562. In Carter vs. Bennett, 4 Fla. 283, text 338, this court quotes with approval the Supreme Court of New York as being in perfect agreement with the Supreme Court of the United States, as follows: "A party who objects to evidence or the competency of witnesses should state specifically the grounds of his objections. It is not sufficient to object generally that the evidence is illegal, or the witness is incompetent; but the party objecting must put his finger upon the very point, to apprise the court and his adversary of the precise objection he intends to make."

The defendant offered in evidence a receipt dated April 1st, 1891, for a large payment upon the claim sued upon, given by Carter, the assignor of such claim. The court excluded the receipt. There was no error in such ruling. The pleas upon which issue was taken were filed February 2d, 1891, nearly two months before the date of the receipt which was excluded. There was no issue in the case to which the evidence was applicable. The matter of defense sought to be established by the evidence offered was one arising after the commencement of the action. The pleas in the case did not state whether the defenses arose before or after action begun, and according to our statute must be deemed pleas of matters arising be-

fore action brought. Sec. 45, p. 823, McClellan's Digest; sec. 1066 Rev. Stats. This disposes of the assignment, but as the case must be remanded for a new trial, we think it proper to speak of the merits of the matter of the exclusion of this receipt. The declaration contains an express allegation that Carter, the original claimant, "transferred and assigned all his right and demand to the plaintiff, of which defendant had notice." This assignment by Carter to the plaintiff is not denied by any plea in the case. If Carter had transferred all of his right and demand to the plaintiff, it could not avail the defendant to make a payment to one who had no right to receive the same. Unconnected with proof of authority given by plaintiff to Carter to collect, the giving of a receipt by Carter could not effect any right of the plaintiff, and the evidence offered was for that reason wholly irrelevant. It is claimed, however, that the account was not transferred to the plaintiff absolutely, but only as collateral security. The receipt given the defendant, as administrator, which was offered, itself states that the money was "in part payment of account due me by the estate, and said account is now in the hands of W. Y. Sandlin as collateral for money I owe him." Thus the defendant was advised by the very receipt given him that the account·upon which the payment was made was out of the possession and control of Carter, to whom payment was made, and that it had been pledged by him to plaintiff as a collateral security. That the assignment of the account by Carter was as collateral security, instead of an absolute transfer of title, can not alter the case, in the absence of proof that the indebtedness of Carter to the plaintiff secured by the assignment had been paid. The assigned account would be of no value as collateral security if the as-

signor might continue to treat it as his own and receive payment thereof. He had parted with his possession, right of possession and power to receive payment of the paper, and the plaintiff can not be bound by any payment made to Carter by defendant, while the defendant had full notice and knowledge of the plaintiff's rights on the matter. This will be more apparent a little further on in the course of this opinion when we consider the terms of the assignment and the rights of one who holds a paper as collateral security.

It is alleged that the Circuit Court erred in refusing to grant a new trial in the case. Among other grounds of the motion for new trial it is asserted that the verdict was contrary to law and evidence, and excessive in amount. Examination of the record shows that the account sued upon, as shown by the bill of particulars attached to the declaration, was for "surveying and locating fifty lots of land in Echols county, Georgia, $2,750, and five months' services at $25, $125." Upon trial the plaintiff offered an account for "surveying and locating fifty-eight lots of land in Echols and Clinch counties, State of Georgia." A. M. Knowles, a witness for plaintiff, testified that the lands which were surveyed, and for the surveying of which the suit was brought, were located in Echols and Clinch counties, Georgia, principally in Clinch. The defendant moved to strike out all evidence relating to work done upon other lands than those in Echols county, upon the ground that the same was not included in plaintiff's bill of particulars. The court ruled that the work could be proven any where else than in Echols county, but "that it must come in under the item of $125." Therefore under the ruling of the court no recovery could be had except for work done in surveying land in Echols county, Georgia.

The plaintiff, under our liberal rules of amendment, could, if he had desired, have amended his bill of particulars so as to have made the evidence applicable to it. He did not do so, but acquiesced in the ruling of the court. The evidence offered must be confined to the bill of particulars, and, of course, the plaintiff could not prove items not mentioned therein. Robinson vs. Dibble's Admr., 17 Fla. 457; Hall vs. Sewell, 9 Gill, 146; Harding vs. Griffin, 7 Blackf. 462; Ritter vs. Daniels, 47 Mich. 617. Therefore in order to sustain the verdict, it must be shown that work in surveying land was performed by Carter sufficient to amount to within $125 of $2,000. We are not clear that under the proceedings had in this case, and the facts of the same, that the variance on proving the surveying of lands in Clinch as well as Echols county was a material variance of the proof from the bill of particulars, or that the defendant at the time he made the objections was in a condition to make the same, not having made such objection when the account was offered in evidence. We think, however, it is well to state, for the guidance of the lower court, that it would be better in any future trial of the case, if the plaintiff desires to offer proof as to lands in Clinch county, Georgia, that he be required to amend his bill of particulars so as to embrace the same.

The plaintiff offered three witnesses to prove a contract of E. J. Baker, deceased, with Carter, the assignor of plaintiff, in reference to surveying lands. Two of these witnesses, James Burnett and A. M. Knowles, wholly fail to prove any such contract or any liability of the estate for the claim sued upon. The evidence of these witnesses only tended to prove a contract for the surveying of land, in which Carter was to

40

have a half interest in the lands surveyed for his ser-
vices. The witness Knowles testified that the lands
involved lay in Echols and Clinch counties, Georgia,
principally in Clinch. The full testimony of the wit-
ness John M. Carter was as follows: "I know all
about the contract between E. J. Baker and Isham T.
Carter relative to surveying the lands in question.
They talked about it in my presence, after and before
the work was done. I helped Isham T. Carter do the
work. There were about fifty lots of the land, and
about half of it was in Echols county, and the other
was in Clinch county. The agreement was that Isham
T. Carter was to do the work of surveying and locat-
ing, and E. J. Baker was to take the land, and for the
'Wakely lands' Carter was to receive from Baker the
price and value of half of them, upon the basis of $100
per lot. There were about forty of these lots.
There were about fifteen of the others, and for
these he was to receive a salary. I don't know
what salary he was to receive, but I heard Baker tell
Carter that he ought not to charge as much as he did
for the other, and Carter replied that he would not.
The land for which Carter was to receive a salary for
surveying was the same class of land as the other, and
worth about the same to survey and locate." It ap-
pears by the testimony of this witness that the only
proof tending to show even an estimate of any specific
amount agreed to be paid to I. T. Carter by E. J.
Baker, deceased, was that for certain lands called the
"Wakely lands," Carter was to receive from Baker
the price and value of half of them, upon a basis of
$100 per lot, and there were about forty of these lots.
It is very doubtful if the evidence shows the Wakely
lands to be the same claimed to have been surveyed by
Carter for Baker; and it is not shown what portion, if

any, of them were situated in either Echols or Clinch counties, Georgia. The greatest number of such lots that could be claimed to be in Echols county is twenty-five. The services for surveying these would amount to only $1,250, to which, adding $125, the monthly wages, which did not seem to be seriously contested, would be $1,375, the extreme limit of the principal amount due the plaintiff, if he could recover only for lands in Echols county. From this sum should be deducted $572.78, the amount credited on the bill of particulars, leaving $802.22 principal sum which, with legal interest from the time suit was brought, under the proof should have been the extreme limit of plaintiff's recovery for surveying in Echols county. In any event the verdict was clearly excessive because, admitting the plaintiff had proven that he was entitled to recover the full amount of $2,000, for surveying forty lots, at $50 each, and the item of $125, the jury should have deducted the $572.78, which the bill of particulars upon its face showed defendant had paid upon the claim sued upon, and have only rendered a verdict for the net balance and interest, which could not have amounted to $2,000. We think the testimony was too loose and uncertain to support the verdict, and that the verdict was excessive in amount, and that the assignments of error under consideration were well taken, and that the Circuit Court erred in refusing a new trial in the case.

As a new trial is to be had in the case, one other contention upon the part of the appellant needs consideration. The appellant claims that the appellee (plaintiff below) being only a holder of the claim sued upon, as a pledge or collatteral security, is not a real party in interest so that he may bring a suit thereon in his own name. By the terms of the assignment Car-

ter, the assignor, did, "for value received, transfer,. assign and set over to" the plaintiff said account,. "with full power to collect the same, by suit or otherwise, as fully as" he, Carter himself, "could or would have done." The defendant developed upon cross-examination that the plaintiff held the claim as collateral security for an indebtedness of Carter to him; that he (plaintiff) was to take the account, collect it in any manner he chose, pay himself and expenses of collection out of the proceeds, and the residue, if any, to Carter; but that he (the plaintiff) had full control of the account and power to settle it up in any manner that suited him. The assignment undoubtedly shows that the legal title to the claim sued upon was in the plaintiff. We think that he was such a real party in interest as could maintain the action under our statute (sec. 1, Chap. 3241, acts 1881; sec. 72, p. 829 McClellan's Digest; sec. 961 Rev. Stats.) The fact that the plaintiff might be liable to account for the proceeds, or to pay some of them over to the assignor, does not prevent him from maintaining the suit. The proper application of the proceeds may sometime become a question between the plaintiff and the assignor, but, in the absence of any allegation of fraud or bad faith in making the assignment, can not be a matter effecting any right of the defendant. Jones on Pledges, sec. 664 et seq.; Bank of Lafayette vs. Bruff, 33 La. Ann. 624. Minnesota has a statute almost identical in terms like ours. A case arose in that State where a promissory note, payable to order, was transferred after maturity, without endorsement by the payee, as collateral security for the payment of a debt. The court held that under the statute the pledgee of the note could maintain an action thereon in his own name. White vs. Phelps, 14 Minn. 27, S. C. 100 Am. Dec.

190. The terms of the assignment, which have been quoted above, and the evidence in reference to the same, show that the very object and purpose of the transfer of the account by Carter to the plaintiff was that he might collect the money thereon to pay the debt due him by Carter, and that he might take any action necessary for that purpose, including the bringing of suits. We think that under this evidence the plaintiff acquired such ownership and property in the claim as to constitue him a real party in interest, with the right to enforce payment of the claim by a suit at law.

For the error pointed out herein the judgment of the Circuit Court is reversed and a new trial awarded.