## THE NORTHERN CENTRAL RAILWAY COMPANY *v.* THE STATE OF MARYLAND, Use of Adeline Price, Widow, and Others.

### *Decided November 24th, 1868.*

NEGLIGENCE ; CONTRIBUTORY ; WHEN A QUESTION FOR THE JURY ; MUTUAL NEGLIGENCE ; GROSS NEGLIGENCE ; DAMAGES FOR DEATH AS THE RESULT OF NEGLIGENCE.  PRINCIPAL AND AGENT.  · PRAYERS ; CONCEDED ; WITHDRAWING.

Railroad companies are bound in the conduct of their trains to use such care and caution to prevent injury to persons or property, as prudent and discreet persons would have used and exercised under the circumstances of the case; and the absence of such care and caution would constitute negligence.  (*a*)                                     p. 438

If a party injured by collision on a railroad so far contributes, by his own negligence, to his misfortune, that but for such negligence on his

---

(*a*)  See *State, use of Coughlan v. B. & O. R. R. Co.,* 24 Md. 105, note (*a*).  See *B. & O. R. R. Co. v. Mulligan,* 45 Md. 493.

part, the misfortune and damage complained of would not have oc-curred, an action to recover damages resulting from his death cannot be sustained.  (*b*)                                                                   p. 435

And if negligence has been mutual in the production of the injury, no action lies, for the reason that as there can be no apportionment of damages, there can be no recovery.  (*c*)                                 p. 435

*Such negligence, however, must have been concurrent, **421** and formed the proximate cause of the injury complained of, for if the negligence of the defendant were the *proximate*, and that of the party injured the *remote*, cause of the injury, the action is maintainable, not-withstanding the party injured may not have been entirely without fault.                                                                   pp. 435-436

Although the party injured, and who subsequently died, may have incautiously gotten upon the track of a railroad, yet if he could not at the time of the collision by the exercise of ordinary care, have avoided the consequences of the defendant's negligence, assuming that there was such, the right to recover exists. .                                 p. 437

If, however, by ordinary care he might have avoided the conse-quences of such negligence on the part of the defendant, he would be the author of his own misfortune, and therefore no action would lie.
                                                                   p. 437

The obligation is mutual, to use care to avoid the consequences of each other's negligence; the whole matter being for the determination of the jury, as to whose negligence and want of care constituted the proximate and direct cause of the injury.                                 p. 437 ·

---

(*b*)  See *State, use of Coughlan v. B. & O. R. R. Co.*, 24 Md. 105.

(*c*)  If both parties are guilty of negligence, or are remotely to blame, that party whose want of ordinary care constituted the proxi-mate cause of the injury, is to be considered responsible; *McMahon v. N. C. R. R. Co.*, 39 Md. 459; *Maryland Central Railroad Co. v. Neubeur*, 62 Md. 391; *Harford County v. Wise*, 75 Md. 41.   In cases where the evidence implicates the plaintiff as well as the defendant in occasion-ing the accident, in order to debar the former from recovering, it should appear that his negligence so contributed to the injury, that without such negligence on his part, the accident would not have happened; nor will he be debarred, if the defendant might, by the ex-ercise of reasonable care, have avoided the consequences of the plain-tiff's neglect or carelessness; *Frech v. B. & P. R. R. Co.*, 39 Md. 575; see also *Balto. City Pass. R. R. Co. v. McDonnell*, 43 Md. 551.   As to pure accidents, for which neither party is liable, see *Washington Turn-pike Company's Case*, 80 Md. 36; *B. & O. R. R. Co. v. State, use of Savington*, 71 Md. 599.    As to accidents attributed to the act of God, see *Gault v. Humes*, 20 Md. 297-298, note (*a*).   See also *Sentman v. B. & O. R. R. Co.*, 78 Md. 222; *Piedmont & Cumb. R. R. Co. v. McKensie*, 75 Md. 458; *City Pass. R. R. Co. v. Nugent*, 86 Md. 358.   See also *Flynn v. Canton Co.*, 40 Md. 312.   As to the burden of proof to show negli-gence, see *Coughlan v. B. & O. R. R. Co.*, 24 Md. 105, note (*cc*).

Negligence is a relative term, and is very much dependent upon the particular facts and circumstances of each case that occurs.  (*cc*)

p. 438

What may be gross negligence in one case, may not be so in the light of the particular facts of another;  and ordinary care in one case may be very gross negligence in another and a different case.  (*d*)

p. 438

Negligence in cases like this, is not so much a question of law, as it is a question of fact, depending for its determination upon a consideration of all the attending facts and circumstances, in connection with the ordinary habits, conduct and motives of men.  (*e*)

p. 440

In connection with other facts and circumstances, it is competent for the jury to infer absence of fault on the part of the deceased, from the general known disposition of men to take care of themselves, and keep out of the way of difficulty and danger.  (*f*)          p. 438

For the trial and determination of such a question, a jury of experienced and intelligent men are peculiarly adapted.  (*g*)     p. 440

But negligence may at times become a question of law, to be determined by the court, upon a given state of facts, either admitted or to be found by the jury.  (*h*)                     p. 440

The court, however, should not make deduction or draw inference from evidence.                              p. 440

The deceased was run over and injured by a train of cars of the Northern Central Railway Company.  After the train was stopped, the injured man was found upon the pilot of the engine in a helpless and apparently lifeless condition, and was removed from thence by the employees of the railroad company, and locked up in a warehouse at night. On opening the warehouse in the morning, he was found to have come

---

(*cc*)  It is metaphysically impossible to evolve a concept of negligence apart from the facts which give rise to it and independently of some imposed or implied correlative duty; *Baltimore City Pass. R. R. Co. v. Nugent,* 86 Md. 357.

(*d*)  Cited in *Penn. R. R. Co. v. State, use of McGirr,* 61 Md. 116.

(*e*)  The court will always instruct the jury, if applied to, as to the degree of diligence or skill and care which the law imposes upon the respective parties, and the jury are then to determine if the requisite conduct has been observed;  see *Cumb. & Penn. R. R. Co. v. State, use of Fazenbaker,* 37 Md. 169; *Balto. Traction Co. v. State, use of Ringgold,* 78 Md. 422.

(*f*)  See cases cited in note (*a*) to *B. & O. R. R. Co. v. Worthington,* 21 Md. 275.

(*g*)  Cited in *B. & O. R. R. Co. v. Keedy,* 75 Md. 329.

(*h*)  Cited in *B. & P. R. R. Co. v. State, use of Stansbury,* 54 Md. 655. It is the province of the jury to make reasonable deductions from controverted facts; *Cumb. & Penn. R. R. Co. v. State, use of Fazenbaker,* 37 Md. 169; *Baltimore Traction Co. v. Appel,* 80 Md. 603; *Cook v. Baltimore Traction Co.,* 80 Md. 552; *Baker v. Maryland Coal Co.,* 84 Md. 27; *Balti-*

to life during the night, and to have afterwards died from hemorrhage of an artery which had been severed by the collision. *Held:*

*That from whatever cause the collision occurred that there- **422** upon at once it became the duty of the railway company's agents in charge of the train, to remove the injured person, and to do it with a proper regard to his safety and to the laws of humanity. And if in removing and locking him up, although he was apparently dead, negligence was committed whereby his death was caused, there is no principle of reason or of justice upon which the railroad company can be exonerated from responsibility. (*i*)                                    p. 441

And in making such removal, its agents must be regarded as acting in the course of their employment.                                    pp. 441-442

Where a prayer offered by one party has been granted upon the concession of the opposite party, it becomes the duty of the court afterwards to withdraw it, if it be found not to express the law applicable to the case. (*j*)                                    p. 443

Appeal from the Superior Court of Baltimore City.

This was an action, brought by the State, for the use of the widow and children of Robert Price, deceased, to recover damages resulting from his death, alleged to have been caused by the appellant. It appeared from the evidence at the trial, that the deceased, on the night of the 26th of June, 1866, was run over at Cockeysville by the express train of the appellant and apparently killed. Supposing him to be dead, the agent of the appellant, at Cockeysville, without objection on the part of the conductor, caused the body to be locked up in the appellant's warehouse, and the next morning it was found that he had come to life during the night, dragged himself across the warehouse and was lying dead at some distance from where he had been placed. The train was the Elmira express, which

---

*more City Pass. R. R. Co. v. Cooney,* decided by the Court of Appeals, March 3, 1898. But where but one inference can be drawn from the facts, the question becomes one of law for the court, and the jury should be instructed accordingly, see *B. & O. R. R. Co. v. State, use of Good,* 75 Md. 537; *Baltimore Traction Co. v. Helms,* 84 Md. 515. But in such cases the conduct of the plaintiff, relied on as amounting in law to contributory negligence, must be established by clear and uncontradicted evidence; *Lake Roland Elevated Co. v. McKewen,* 80 Md. 593; where the evidence is contradictory, the question of negligence should be left to the jury; *Central Railway Co. v. Coleman,* 80 Md. 328; *Baltimore Traction Co. v. State, use of Ringgold,* 78 Md. 422.

(*i*)  See *B. & O. R. R. Co. v. State, use of Woodward,* 41 Md. 288.
(*j*)  See *Baugher v. Wilkins,* 16 Md. 35.

had left Baltimore at 9.45 that night, and was going at a rapid rate of speed, but not beyond its schedule time. The engineer, Gardner Cobb, stated " that after he first saw the man it would have been impossible to save him at the speed they were going; nor even if they had been running at the rate of twenty miles or ten miles an hour, but he might have been saved if they had been going at the rate of four miles an hour; that it was not his duty to slacken his speed on approaching Cockeysville, as **423** that train did not stop' there, *and therefore it was not, as far. as that train was concerned, a ' station,' within the meaning of the 49th rule, given in evidence by the plaintiff; and there was no switch at Cockeysville upon the east track, on which his train was running; that he sounded the whistle (as required by the 52nd rule,) about a quarter of a mile from where the rail road crossed the turnpike, the spot for sounding the whistle being a tree, which he was able to identify; that the night was dark, with a slight misty rain; that he crossed the turnpike at the speed, he thought, of twenty-five or thirty miles an hour, which was not unusual or in excess of what the time tables of the appellant required. The speed at that time, he thought, was as great as it was at any time between Baltimore and Harrisburg. Through the City of Baltimore the rate allowed by city ordinance is four miles an hour. After passing the turnpike, and before reaching the depot or station house, he saw, by the light of the reflector, a horse upon the track, apparently seventy-five or a hundred yards ahead. The horse appeared to be facing towards him, and in the act of rearing, and, as he thought, a man. was on his back. That he immediately gave the signal of danger by sounding the whistle, but did not reverse the engine, as by so doing, at the speed at which he was running, he would probably have thrown the train off the track and thereby endangered the lives of all or many of the passengers. Almost instantaneously the collision took place; the engine running under the horse while he was in the act of rearing. Before the train could be stopped, it had run past the first bridge, (a small iron one not covered,) and up to about half way between that and the next bridge, which was a covered one, (neither of said bridges having any footway that could be crossed by a horse,) on stopping the train, he got off and gave it in charge of the fireman, who backed it

slowly towards Cockeysville, he and the conductor walking in advance, with a light, in search of the man and horse. They found the horse dead, opposite the warehouse, over on the west track, the train being on the east track, and *the saddle **424** and the man's hat near by the horse, but not finding the man, he suggested that he was on the pilot of the engine, and there they found him, lying on his back, and apparently dead; that the structure of the engine there being three slanting rods, running down in front, was such that the horse could not have been carried on it any distance."

The employees of the Rail Road Company attached to the train, took him down, and some one proposed that he should be carried into the rail road telegraph office, but Shaffner, the telegraph operator and station agent of the appellant, objected, and at his instance, and with the consent and under the direction of the conductor, he was carried by the train hands into a warehouse belonging to the company, an isolated stone building, and there placed upon a board on top of some barrels, and *locked up*—Shaffner, the station agent, taking the keys. It was remarked at the time, " that the man ought to be examined, and that the place was unfit for him to be placed in." No physician was sent for, to make an examination into the nature and extent of his injuries. Upon unlocking the warehouse in the morning, it was found that he had come to life during the night, and had moved some paces from the spot where he had been laid, and was found in a stooping posture, holding his right leg with his hands, dead but still warm, having died from hemorrahge of the arteries of his right leg, which was crushed at and above the knee.

By the testimony of a physician, who had been called in at the coroner's inquest, it appeared that the deceased had his right leg cut and broken, and there was a small cut on his scalp, and also on his right arm. There was no apparent injury of the skull or brain. According to the medical testimony, the hemorrhage of the artery of the leg caused his death within an hour or two from the time when blood commenced flowing. The body was still warm when visited in the morning, but life was then extinct.

The following rules of the defendant were given in evidence by the plaintiff:

**425**  ·*" 49. Enginemen shall approach switches and stations cautiously, and have their trains under control, until the safety signal is received, or they can see that all is right and clear for the train."

" 52. Enginemen must sound the whistle at least one-quarter of a mile from every road-crossing, and the sound must be *repeated* at intervals, or the engine bell rung, until the road-crossing is passed. No excuse will be received for accidents that may occur through neglect of this precaution."

The plaintiff offered the following prayers:

1. If the jury find that Robert Price, on the night of the 26th of May, 1866, while crossing the rail road of the defendant at Cockeysville, in Baltimore County, on horseback, was run into by a locomotive of the defendant on its said rail road, and that his death was occasioned by the gross negligence of the defendant or of its agents, and that by the exercise of ordinary care on the defendant's part, the accident might have been prevented, and that Price could not, by the exercise of ordinary care on his part, have avoided the consequences of such negligence of the defendant or its agents, then the jury ought to find for the plaintiff, and may award such damages as they may think proportioned to the injury, resulting from such death, to the widow and children, respectively, of Price, for whose benefit this action is brought.

2. That if the jury shall find from the evidence that the collision which resulted in the death of the deceased, was not caused by the negligence of the defendant, the plaintiff is not entitled to recover, unless the jury shall further find that the death of the said Price was subsequently caused by the gross negligence of the defendant or of its agents, acting in the course of their employment.

And the defendant asked the following instructions:

1. If the jury shall find from the evidence that the negligence or want of care of the deceased in any way contributed to cause the collision which resulted in his death, the plaintiff is not entitled to recover.

**426**    *2. That unless the jury shall find from the evidence that the collision, which resulted in the death of the deceased, was caused by the negligence of the defendant, the plaintiff is not entitled to recover, and that there is no evidence from which the jury can find such negligence.

3. That if the jury shall find a verdict for the plaintiff, in assessing the damages, they are not to take into consideration the mental pain and suffering of the plaintiff's *cestuis que use* in consequence of the death of the deceased, and are not to give against the defendant punitive, vindictive or exemplary damages, but in estimating the damages, they are confined to the pecuniary damage sustained by the parties for whose use this action is brought.

4. That all the evidence relative to the conduct of the defendant's agents towards the deceased, subsequent to the collision which resulted in his death, is inadmissible, and must not be considered by the jury.

5. That unless the jury shall find from the evidence that the collision, which resulted in the death of the deceased, was caused by the negligence of the defendant, the plaintiff is not entitled to recover.

The court granted the prayers of the plaintiff, the first being granted in connection with the defendant's third prayer.

The defendant's second and fourth prayers were rejected by the court, and its fifth prayer was rejected as offered, but granted as qualified by the plaintiff's second prayer.

To this ruling of the court, the defendant excepted.

The defendant's first prayer was conceded by the plaintiff's counsel and granted by the court, but after the plaintiff's counsel had opened the case to the jury, he was followed by the defendant's counsel, who insisted that upon the defendant's first prayer, the plaintiff could, under no circumstances, recover, if the jury found that the deceased by any negligence on his part contributed to the collision. The plaintiff's counsel then stated that if such construction were insisted on, they asked to withdraw their concession of said prayer, but the *defendant's counsel objected to such withdrawal. **427** Whereupon the court, of its own motion, rejected the prayer which had been so in the first instance granted by it at the request of the plaintiff. To this action of the court the defendant excepted, and the verdict and judgment being against it, the present appeal was taken.

The cause was argued before Bartol, C. J., Nelson, Stewart, Miller and Alvey, JJ.

*Daniel M. Thomas* and *William N. Norris,* for the appellant:

The appellant's first prayer was correct in principle and warranted by the evidence, and therefore it was error to reject it. No principle of law is better settled than the one contained in this prayer, " that if the negligence or want of care of the deceased in any way contributed to cause the collision which resulted in his death, the plaintiff is not entitled to recover." *State, Use of Coughlan v. B. & O. R. R. Co.* 24 Md. 105; *Sahagan v. R. R. Co.* 1 Allen, 187; *Fox v. Gloucester,* 29 Conn. 208; *Bannon v. B. & O. R. R. Co.* 24 Md. 125; *Wilds v. R. R. Co.* 2 Am. L. R. N. S. 80-85; *Telfer v. R. R. Co.* 3 Am. L. R. N. S. 665; *R. R. Co. v. Spearen,* 11 Wright, 300-305; *R. R. Co. v. Heileman,* 13 Wright, 60; *R. R. Co. v. Norton,* 12 Harris, 465; *R. R. Co. v. Evans,* 3 P. F. Smith, 255; 2 Hilliard on Torts, 366; *R. R. Co. v. Buckner,* 28 Ill. 299.

And the facts in this case going to establish negligence on the part of the deceased, are such that it cannot for one moment be claimed that there was no evidence upon which the prayer was founded. Even if the prayer were wrong in itself, the plaintiff's counsel had an undoubted right to make concessions and admissions to bind his clients. And if he thought it advisable to pursue a certain course and make certain concessions, he could not afterwards retract what he had done, simply because he might think he had made a mistake.

**428**    *The appellant's second prayer should also have been granted. It requested the court to instruct the jury that there was no evidence from which they could find the defendant guilty of negligence in regard to the collision. The deceased was not a *passenger* but a *stranger* to the defendant, and the latter was only bound to use *ordinary care* towards him. *State, Use of Coughlan v. B. & O. R. R. Co.* 24 Md. 102, 103; *B. & O. R. R. Co. v. Breinig,* 25 Md. 378; *Brand v. R. R. Co.* 8 Barb. 376.

And there certainly was *no evidence* to show that the defendant did not exercise ordinary care to prevent the collision. The train was not running at an extraordinary speed. The whistle was sounded at the proper place, and after the man was discovered on the track, it was too late to prevent the disaster. The evidence, if any, to the contrary of this, was too slight to justify the court in submitting it to the jury whose

prejudices against railway corporations are too well known both in this country and in England. *Schauck v. N. C. Ry. Co.* 25 Md. 462; *Wilds v. R. R. Co.* 2 Am. L. R. N. S. 80-85; *Cotton v. Wood,* 98 E. C. L. 566; *Skip v. Rw. Co.* 9 Exch. 223; *Coonan v. R. R. Co.* 4 H. & N. 787.

The appellant's fifth prayer was improperly rejected. It instructed the jury that " unless they should find from the evidence that the collision, which resulted in the death of the deceased, was caused by the negligence of the defendant, the plaintiff is not entitled to recover." This instruction the court rejected as it stood, but granted it with the qualification contained in the appellee's second prayer, viz: " Unless the jury shall further find that the death of the said Robert Price was *subsequently* caused by the gross negligence of the defendant or its agents, *acting in the course of their employment."* If this qualification had been otherwise proper, it was wrong in this respect, that there was no evidence to support it. Towards passengers, the company may, perhaps, under similar circumstances, be under an obligation to perform the ordinary duties of humanity, and therefore, in the *performance **429** of them, its agents may properly be regarded as " acting in the course of their employment." But the deceased was a *stranger* to the company *prior to the collision,* and continued to be a stranger to it *subsequent to the collision,* unless the same was caused by its negligence, and yet each of these instructions virtually concede the *absence of negligence,* (inasmuch as they authorize a finding for the plaintiff, whether there was negligence or not,) and still submit to the jury the question whether the acts of the company's agents, subsequent to the collision, were done " in the course of their employment." There confessedly was no evidence in the case to show that such was the nature of their employment, unless it be held that it is one of the duties of the conductor of each train, and of the telegraph operator at each station, to take care of all persons requiring assistance along the line of the road.

The appellee's first prayer should have been rejected; first, because the instruction submitted to the jury the question whether the *death* " was occasioned by the gross negligence of the defendant or its agents," without requiring them to find that such negligence was committed by said agents *in the*

*course of their employment.* Unless the defendant was liable in respect to the collision, it manifestly was not liable for the subsequent acts of its agents, unless they were done within the course of their employment. *Lympus v. London Gen. Omnibus Co.* 2 H. & C. 526. Secondly, because the question of contributive negligence on the part of the deceased is too vaguely stated.

The appellee's first and second prayers were both erroneous in the manner in which each submitted the question of gross negligence to the jury. *B. & O. R. R. Co. v. Breinig,* 25 Md. 378.

*Arthur W. Machen* and *Richard J. Gittings,* for the appellee:

The appellee's first prayer presented the general question of the liability of the appellant for the consequences of negligence, in a manner free from exception. The question of **430** *negligence on the appellant's part, without contributing negligence on the part of the deceased, was submitted to the jury in strict accordance with the rule settled in *Bridge v. R. R. Co.,* 3 M. & W. 244, and *Davies v. Mann,* 10 M. & W. 545, following *Butterfield v. Forrester,* 11 East, 60, and adopted in many subsequent cases. See *Lucas v. R. R. Co.* 6 Gray, 72; *Stucke v. R. R. Co.* 9 Wis. 202.

No specific objection was made to the prayer, under the Act of 1862, ch. 154. The court granted it in connection with the appellant's third prayer, and the two together presented this branch of the case as favorably for the appellant as it could desire.

The question of negligence was for the jury under all the circumstances of the case. *B. & O. R. R. Co. v. Worthington,* 21 Md. 275, 285, 287; *Merchants Bank v. Bank of Commerce,* 24 Md. 53; *Keech v. Baltimore & Wash. R. R. Co.,* 17 Md. 32; *Beers v. R. R. Co.* 2 Am. Ry. Cas. 114; *Ernest v. R. R. Co.* 35 N. Y. 9, 38-40; *Renwick v. R. R. Co.* 36 N. Y. 132; *Bigelow v. Inhab. of Rutland,* 4 Cush. 247; *Spofford v. Harlow,* 3 Allen, 179; *Alger v. City of Lowell,* 3 Allen, 402; *Stuart v. Inhab. of Machias,* 48 Maine, 477; *Bilbee v. Ry. Co.* 18 C. B. N. S. 584; *Doorman v. Jenkins,* 2 A. & E. 256; *B. & O.*

*R. R. Co. v. Breinig,* 25 Md. 378; *B. & O. R. R. Co. v. State, Use of Miller, ante,* p. 252.

Want of care on the part of the person injured is not to be presumed, but it is to be proved as matter of defense; and whether there was negligence or not, is a question of fact to be decided by the jury. *Johnson v. R. R. Co.* 20 N. Y. 65; *Durant v. Palmer,* 5 Dutcher, (N. J.) 544; *Creed v. Hartman,* 29 N. Y. 591; *R. R. Co. v. Hagan,* 47 Pa. St. 244.

Of course the use of the word " agents " in the appellee's first prayer, implied that the employees in question were *acting as such.* The very word agents, or servants, **431** imports that the persons spoken of are acting in the course of their employment.

Whether or not sufficient care has been used by a rail road company *at a crossing* is a question of fact to be decided by the jury, upon all the circumstances. And compliance with statutory regulations, by ringing a bell, etc., will not exempt the proprietors of a rail road from the obligation to use reasonable care and diligence in other respects, when the circumstances of the case render the use of other precautions reasonable. *Bradley v. R. R. Co.* 2 Cush. 539; *Bilbee v. R. R. Co.* 18 C. B. N. S. 584; *B. & O. R. R. Co. v. State, Use of Miller, ante,* p. 252; *Renwick v. R. R. Co.* 36 N. Y. 132.

The appellant's counsel offered a prayer, " That unless the jury shall find from the evidence that the collision which resulted in the death of the deceased was caused by the negligence of the defendant, the plaintiff is not entitled to recover." This prayer would have been unobjectionable if the death had proceeded directly from the collision, but, upon the facts, was bad as requiring the jury to ignore all that occurred after the collision—the gross negligence exhibited in depositing Price in the appellant's warehouse under the circumstances proved in the case. Accordingly, the plaintiff presented the *same* proposition, but qualified by the addition, " *unless the jury shall further find that the death of the said Robert Price was* SUBSEQUENTLY *caused by the gross negligence of the defendant, or of its agents acting in the course of their employment.*" And, as so qualified, the court granted it. *Dowell v. Steam Nav. Co.* 5 El. & Bl. 206; *Tuff v. Warman,* 5 C. B. N. S. 573; *Lynch v. Nurdin,* 1 Q. B. 29.

Even a person who is not only in fault, but is engaged in a violation of a law, is not out of the protection of law.  Thus, **432** *one who is driving on the wrong side of a street and is run into and injured by the negligence of another who is rightly on that side, is not necessarily debarred from maintaining an action.  *Spofford v. Harlow,* 3 Allen, 176.  And see *Birge v. Gardner,* 19 Conn. 507; *Norris v. Litchfield,* 35 N. H. 271; *Hartwell v. Roper,* 21 Wend. 622, approved in *Bannon's Case,* 24 Md. 125.

And negligence or want of ordinary care on a plaintiff's part, will not disentitle him to recover, *if the defendant might by the exercise of ordinary care on his part have avoided the consequences of the neglect or carelessness of the plaintiff.*  *Tuff v. Warman,* 94 E. C. L. 573; *Beers v. R. R. Co.* 19 Conn. 572-6; *New Haven Steamboat Co. v. Vanderbilt,* 16 Conn. 429, 430; *Springett v. Ball,* 4 Fost. & Fin. 472; *Sills v. Brown,* 9 C. & P. 606.

Or, as the proposition is sometimes stated, if there were negligence on the part of the plaintiff, yet if, at the time when the injury was committed, it might have been avoided by the defendant by the exercise of reasonable care and prudence, an action will lie.  *Frow v. R. R. Co.* 24 Vt. 495.  The distinctions on this subject which have the support of the best authorities are well stated in *Kerwhacker v. R. R. Co.* 3 Ohio N. S. 172, 195, 196, 200; *R. R. Co. v. Hiatt,* 17 Ind. 105; *R. R. Co. v. Wright,* 22 Ind. 382; *R. R. Co. v. Patton,* 31 Miss. 192-8; *R. R. Co. v. Chenewith,* 52 Pa. St. 386; 1 Hill. on Torts, ch. 4, secs. 17, 17*a*, 20.

Whatever might have been the case if the injurious conduct had consisted in mere omission, the company is clearly responsible for the *act* of its servants in locking the man up in the warehouse.  This distinction seems to have been indicated by Lord Chief Justice Best, in the famous Spring-gun case.  " It has been argued," he said, " that the law does not compel every **433** line of conduct which humanity or religion may *require; but there is no act which christianity forbids, that the law will not reach."  *Bird v. Holbrook,* 4 Bing. 641; *Lynch v. Nurdin,* E. C. L. 425-6.

In the case of a voluntary undertaking to perform an act touching a matter in regard to which the party was under no

duty to do any thing—in other words, the simple case of a mandatary or depositary—he is liable, if he perform it *improperly.* " An action will not lie for not doing the thing, for want of a sufficient consideration, but yet if the bailee will take the goods into his custody, he shall be answerable for them; for the taking the goods into his custody is his own act." *Coggs v. Bernard,* 2 Ld. Raym. 909, 911 ; 1 Smith Lead. Cases, 82.

In this case the appellant is clearly responsible for the acts of its conductor, agent, and other employees who were in charge of the train and station, done as they were, without malicious motives, in the service of the appellant, and for its benefit. *R. R. Co. v. Vandiver,* 42 Pa. St. 365 ; 1 Redf. on Rail. 510, sec. 130, Ed. 1867 ; *Goff v. R. R. Co.* 107 E. C. L. 672.

Besides the numerous cases which illustrate the general principle, there are two or three which have a special application to the present case. *Seymour v. Greenwood,* 7 Hurl. & Nor. 355 ; *Limpus v. Lond. Gen. Omnibus Co.* 1 Hurl. & Colt. 526 ; *Lovett v. R. R. Co.* 9 Allen, 557 ; *Southwarck v. Estes,* 7 Cush. 385 ; *Sanford v. R. R. Co.* 23 N. Y. 343.

The appellant's first prayer was framed equivocally. To prevent the jury from being misled, the court of its own accord interposed and rejected the prayer. The time taken to reject it—at the outset of the argument of the appellant's counsel— was in the discretion of the court, which was rightly exercised under the circumstances. *Goldsborough v. Cradie,* 28 Md. 477.

The jury had the law correctly propounded in the actual instructions, and this was all the defendant had a right to *ask. The prayer has the further fault that it would **434** authorize the jury to exonerate the defendant if they found that *any* want of care on the part of the deceased contributed to the accident. It is only want of *ordinary* care on the plain· tiff's part that ever has this effect. *B. & O. R. R. Co. v. Breinig,* 25 Md. 378; *B. & O. R. R. Co. v. State, Use of Miller, ante,* p. 252; *Brand v. R. R. Co.* 8 Barb. 376.

There is, therefore, nothing in the second exception. There is nothing in the objection that the precise *age* of the deceased was not proved. There were facts in evidence from which the jury could infer his age with reasonable certainty. But the law demands statistical exactness neither in respect to age nor

any other circumstance entering into the question of the *quantum* of damages. All that is requisite to maintain the action, (besides proof of the negligence and consequent death,) is, that the widow and children had *some* reasonable expectation of pecuniary benefit from his continuance in life. *B. & O. R. R. Co. v. State, Use of Kelly,* 24 Md. 271; *Dalton v. Rw. Co.* 93 E. C. L. 296; *Pym v. Rw. Co.* 116 E. C. L. 396.

Alvey, J., delivered the opinion of the court.

At the trial of this cause in the court below, the plaintiff presented its case to the jury upon two distinct hypotheses, and it now contends that if the facts sustained either of them, it was entitled to recover.

The first hypothesis was that the collision of the train with the deceased was caused by the negligence of the defendant; and the second was, that, conceding the deceased to have been wrongfully on the track of the rail road, and thus, by his own negligence, contributed to and brought about the collision, still, there was gross negligence in the subsequent conduct of the defendant's agents in providing for and disposing of the disabled and apparently dead man, and which was the proximate cause of his death.

**435**    *The two prayers on the part of the plaintiff, and the fifth prayer of the defendant, as modified by the second of the plaintiff, were granted, and the leading question is now presented, whether these prayers, thus granted, fairly instructed the jury as to the law applicable to both hypotheses of the case.

To the plaintiff's prayers, it has been objected in argument here——

1st. That the injury complained of was caused by the negligence and want of care of the deceased, and that there was no sufficient evidence to be submitted to the jury of such negligence on the part of the defendant as would render it liable, in view of all the circumstances of the case; and that, therefore, the prayers were without evidence to support them.

2nd. That it was error in the court below to submit to the jury, as was done by the plaintiff's prayers, the question of negligence, without definition or specific instruction as to what

constituted negligence and want of care under all the facts and circumstances of the case; and,

3rd. That, assuming the collision to have occurred without negligence or want of care on the part of the defendant, it cannot be held responsible for the subsequent acts and conduct of its employees in their treatment of the deceased, even supposing his death to have been proximately caused by their gross negligence and want of care, as contemplated by the plaintiff's second prayer.

1. It is doubtless true, that if the deceased, by his own negligence or want of ordinary care and caution, so far contributed to his misfortune, that, but for such negligence or want of ordinary care and caution on his part, the misfortune and damage complained of would not have occurred, this action could not be sustained. And if negligence has been mutual, in the production of the injury, no action lies, for the reason that, as there can be no apportionment of damages, there can be no recovery. Such negligence, however, must have been concurrent, and formed the proximate cause of the *injury **436** complained of, for if the negligence of the defendant was the proximate, and that of the deceased the remote cause of the injury, the action is maintainable, notwithstanding the deceased may not have been entirely without fault. This principle is settled by many well considered cases, as will be seen by reference to *Trow v. R. R. Co.* 24 Vt. 487; *Kerwhacker v. R. R. Co.* 3 Ohio. St. 172; *R. R. Co. v. Patton,* 31 Miss. 156. The mere negligence or want of ordinary caution on the part of the deceased, as was decided in *Tuff v. Warman,* 5. C. B N. S. 573, would not disentitle the plaintiff to recover, unless it were such that, but for such negligence or want of ordinary caution, the misfortune would not have happened; nor, if the defendant might, by the exercise of care on its part, have avoided the consequences of the neglect or carelessness of the deceased. And, as an illustration of this principle, *Davies v. Mann,* 10 M. & W. 545, may be referred to.

In that case, the plaintiff, having fettered the fore feet of his donkey, turned it into a public road or highway, and at the time of the injury, the donkey was grazing on the off-side of the road, which was about eight yards wide, when the defendant's wagon, with a team of three horses, coming down a

slight descent, at a smart pace, ran against the donkey, knocked it down, and the wheels passing over it, it died soon after. The donkey was fettered at the time, and it was proved that the driver of the wagon was some little distance behind the horses. The Judge told the jury that, " though the act of the plaintiff in leaving the donkey on the highway, so fettered as to prevent his getting out of the way of carriages traveling along it, might be illegal ; still, if the proximate cause of the injury was attributable to the want of proper conduct on the part of the driver of the wagon, the action was maintainable against the defendant ; and his Lordship directed them, if they thought the accident might have been avoided by the exercise of ordinary care on the part of the driver, to find for the plaintiff." A verdict was accordingly rendered for the plaintiff, and on motion for a new trial, which was heard *before the Exchequer, Lord Abinger said : " I am of opinion that there ought to be no rule in this case. The defendant has not denied that the ass was lawfully in the highway, and, therefore, we must assume it to have been lawfully there. But even were it otherwise, it would have made no difference, for, as the defendant might, by the exercise of proper care, have avoided injuring the animal, and did not, he is liable for the consequences of his negligence, though the animal may have been improperly there." That decision was but a fair application of the principle previously announced by Lord Ellenborough, C. J., in *Butterfield v. Forrester*, 11 East, 60, where he said : " In cases of persons riding upon what is considered to be the wrong side of the road, that would not authorize another purposely to ride up against them. One person being in fault will not dispense with another's using ordinary care for himself." The same general principle was applied in the decision of *Bridge v. R. R. Co.* 3 M. & W. 244. Indeed, the authorities, both English and American, are numerous and full to the same effect. And, in this case, though the deceased may have incautiously gotten upon the track of the defendant's road, yet, if he could not, at the time of the collision, by the exercise of ordinary care, have avoided the consequences of the defendant's negligence, assuming that there was such, the right to recover exists. If, however, by ordinary care, he might have avoided the consequences of such negligence on the part of the defendant, he

would be the author of his own misfortune, and, therefore, no action would lie. The obligation is mutual to use care to avoid the consequences of each other's negligence; the whole matter being for the determination of the jury, as to whose negligence and want of care constituted the proximate and direct cause of the injury. *Clayard v. Dettrick*, 12 Q. B. 439. And this was very properly put to the jury by the plaintiff's prayers.

In view of these principles, fixing the relative duties of the parties, was there sufficient evidence to be submitted to the jury, of the defendant's negligence?

*Negligence is a relative term; and, in cases of the **438** character now before us, it is very much dependent upon the particular facts and circumstances of each case that occurs. What may be gross negligence in one case, may not be so in the light of the particular facts of another; and ordinary care in one state of case may be very gross negligence in another and a different case. It is difficult, therefore, to state any general rule more definite than that the defendant was bound, in the conduct of its train, to use such care and caution to prevent injury to persons or property, as prudent and discreet persons would have used and exercised under the circumstances of the case; and that the absence of such care and caution would constitute negligence. We think, however, there was sufficient evidence of negligence to be submitted to the jury. The train was running at a very high rate of speed, and was behind time in reaching the place at which the accident occurred. It does not appear that there was any check in the speed of the train as it approached the crossing of the highway, nor while it was running through the village; and there is some contrariety of evidence as to whether the whistle was blown at all before reaching the crossing of the turnpike road. The night was dark, and there was no watch, or other proper means provided for giving notice to persons who might be upon, or crossing the track, although the place was a public thoroughfare and one much frequented. The train, though running on fast time, was provided with but two brakesmen, which, in this particular instance, proved to be altogether insufficient to stop the train within a reasonable distance after the alarm was given. These facts, and all the circumstances of the case, were proper to be considered by the jury; and, in connection with these facts

and. circumstances, it was competent to the jury to infer the absence of fault on the part of the deceased, from the general and known disposition of men to take care of themselves, and to keep out of the way of difficulty and danger. *Johnson v. R. R. Co.* 20 N. Y. 65. It was not necessarily negligence in the **439** deceased, that he was *on the track of the defendant's road. He may have been attempting to cross it under circumstances that would relieve him of all imputation of negligence. In *Warren v. R. R. Co.* 8 Allen, 227, it was held by the Supreme Court of Massachusetts, that crossing a rail road track, *without looking to see if a train is coming,* is not conclusive proof of the want of care. And so, in *Megrath v. R. R. Co.* 32 Barb. 147, it was held that " it is not always negligence to cross a rail road track at times when a train is not due, or cannot reasonably be expected to pass; *nor to cross a rail road track without looking for a train, when no signal of its approach is given by the ringing of a bell or otherwise.*"

As to the conduct of the defendant's agents after the collision, in their treatment of the injured man, though apparently dead, it was strongly indicative of the grossest negligence, and an entire indifference to the most ordinary feelings of humanity.

The deceased was taken from the pilot of the engine, apparently dead, though showing no external wound to justify the conclusion that life was in fact extinct. Without notice to his family, or to any person who would take an interest in him, or sending for a physician to ascertain his condition, he was taken into the defendant's warehouse, and there laid on a plank across some barrels, and locked up alone all night. It was remarked at the time, that the man ought to be examined, and that the place was unfit for him to be placed in. This suggestion, however, was altogether disregarded. The next morning, when the warehouse was opened, it was found that the unfortunate man had, during the night, revived from his stunned condition, and had moved some paces from the spot where he had been laid, and was found in a stooping posture, holding his right leg with his hands, dead, but still warm, having died from hemorrhage of the arteries of his right leg, which was crushed at and above the knee. It had been proposed to place him. in the defendant's telegraph office, which was a comfortable building, but the telegraph operator objected, and

*directed him to be taken into the warehouse; a place **440**
used by the defendant to deposit old barrels and other rubbish.
The physician who attended the inquest, proved that he
thought it likely that the deceased became conscious when
reaction set in, there being no apparent injury of the skull or
brain.   Blood would begin to flow upon the restoration of con-
sciousness, and the party could not have lived more than an
hour or two after blood began to flow.   From these facts it was
clearly competent to the jury to conclude that there was negli-
gence.

2. The next proposition is whether the question of negli-
gence was properly referred to the jury, by the plaintiff's
prayers.   And this, we think, cannot now be regarded as an
open question in our courts, in the trial of causes like the pres-
ent.   *Worthington v. B. & O. R. R. Co.* 21 Md. 275; *Mer-
chants Bank v. Bank of Commerce,* 24 Md. 53.   Negligence,
in a case like this, is not so much a question of law, as it is a
question of fact, depending for its determination upon a con-
sideration of all the attending facts and circumstances in con-
nection with the ordinary habits, conduct and motives of men.
For the trial and determination of such a question, a jury of
experienced and intelligent men are peculiarly adapted.

It is very true, negligence may, in many cases, become a
mere question of law, to be determined by the court, upon a
given state of facts, either admitted or to be found by the jury.
It is not, however, the duty of the court to draw inferences and
make deductions from evidence.   To do that falls within the
well defined province of the jury, that courts should ever be
careful not to invade.   Where the facts attending the transac-
tion are at all complex, or unusual in their character, the exist-
ence of negligence must be deduced as an inference from all the
facts and circumstances disclosed, after tracing their relation
to the matter in issue, and considering their force and effect.
*Beers v. R. R. Co.* 19 Conn. 569.

But it has been objected to the plaintiff's prayers, which
were granted as instructions, that the questions of care and
*negligence were propounded to the jury in terms too **441**
general to be safe guides in the formation of their verdict.
That the court should have been more specific, and have de-
fined, for the enlightenment of the jury, what constituted ordi-

nary care and gross negligence, in contemplation of law.   We think, however, that there was no error committed in this particular.   If the defendant desired a more specific instruction upon the subject, it should have asked it.   By failing to ask such an instruction we must suppose it was contented and willing to have the case passed upon by the jury, without any more definite instruction from the court than was actually given. Indeed, we are justified in this supposition, from the fact that the defendant proposed to submit the question of negligence to the jury, by its own prayers, in terms not more definite and specific than those employed in the prayers of the plaintiff.   It has, therefore, no right to complain.

3. We are next brought to the question, whether the defendant be liable for the negligence of its agents in their treatment and disposition of the deceased, subsequent to the collision.   This, we think, free from doubt or difficulty.   From whatever cause the collision occurred, after the train was stopped, the injured man was found upon the pilot of the defendant's engine, in a helpless and insensible condition, and it thereupon at once became the duty of the agents, in charge of the train, to remove him, and to do it with a proper regard to his safety and the laws of humanity.   And if in removing and locking up the unfortunate man, though apparently dead, negligence was committed, whereby the death was caused, there is no principle of reason or justice upon which the defendant can be exonerated from responsibility.   To contend that the agents were not acting in the course of their employment in so removing and disposing of the party, is to contend that the duty of the defendant extended no farther than to have cast off by the wayside the helpless and apparently dead man, without taking care to ascertain whether he was dead or alive, or if **442** alive, whether his life could be saved *by reasonable assistance, timely rendered.   For such a rule of restricted responsibility no authority has been produced, and we apprehend none can be found.   On the contrary, it is the settled policy of the law, " to give such agents and servants a large and liberal discretion, and hold the companies liable for all their acts, within the most extensive range of their charter powers."   1 Redfield on Railways, 510; *Derby v. R. R. Co.* 14 How. 468, 483.   The question, as to whether the agents were acting in

the course of their employment, was submitted to the jury, as was done in the recent case of *Whatman v. Pearson,* Law Rep. 3 C. P. 422, decided at Easter Term, 1868; and the defendant had no right to ask a more favorable disposition of it.

We think, on the whole, the court was right in granting the prayers of the plaintiff.

As to the defendant's first, second and fourth prayers, and the fifth as offered, it follows necessarily, from what we have said in regard to the case, that they were properly rejected.

By the first of these prayers the plaintiff was sought to be precluded from recovery if the deceased, "*in any way,* contributed to cause the *collision* which resulted in his death." Thus disregarding the distinction between the remote and proximate cause, and altogether ignoring the conduct of the agents in treating the deceased after the collision.

By the second prayer of the defendant, the right of the plaintiff to recover would have been made to depend upon the jury's finding that *collision* was caused by the negligence of the defendant; thus in this prayer also, excluding the subsequent conduct of the agents as a cause of the death. It also sought to take the whole case from the jury, upon the ground that there was no evidence from which the jury could find negligence of the defendant in causing the collision. This was clearly erroneous.

The fourth prayer was also erroneous, for the reason that it sought to exclude from the consideration of the jury, " all the evidence relative to the conduct of the defendant's agents towards the deceased, subsequent to the collision."

*The fifth prayer was also objectionable as it was **443** offered, because by it the plaintiff's right to recover was made to depend solely upon the negligence of the defendant in producing the collision, without any regard whatever to the subsequent negligence of the agents in causing the death of the deceased. This could not have been granted as an unqualified instruction.

As to the question made by the second bill of exception, we think the court below committed no error in allowing counsel, under the circumstance stated, to withdraw their concession. Upon a misunderstanding as to the proper construction of the prayer, it became the duty of the court to construe it, and if it

26    v. 29

was found not to express the law applicable to the case, in the absence of concession, to withdraw it from the jury. This was done, and we think properly.

There being nothing in the rulings of the court below of which error can be predicated, the judgment appealed from must be affirmed.                    *Judgment affirmed.*