## Sarah Quinn *v.* Shamokin and Mount Carmel Electric Railway Company, Appellant.

*Negligence—Master and servant—Responsibility of master.*

It is no answer to an action against a master for an injury by his servant, in performing an act for the benefit of the master, that the servant's duties were in another department of the business, and that his act was without express authority.

A trolley car having become stalled, an employee of the company not a motorman, with the consent of the motorman in charge returned to the barn and brought out a car which in approaching the stalled car collided with it to the injury of the plaintiff. *Held*, that the question of the company's liability for the accident was properly left to the jury.

*Contributory negligence—Act of a passenger under a sudden peril.*

When a passenger in a moment of sudden peril from the uncontrolled approach and collision of another car jumps from the car and is injured, it is not error for the court to refuse to hold that she cannot hold the defendant company liable for the results of its negligence. While the act of jumping if attempted under such circumstances, might not have been the part of wisdom, it is not to be judged by the same standard as acts done when no sudden danger threatens.

Argued Dec. 13, 1897. Appeal, No. 4, Feb. T., 1898, by defendant, from judgment of C. P. Northumberland Co., Feb. T., 1896, No. 180, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Trespass. Before SAVIDGE, P. J.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $863. Defendant appealed.

*Errors assigned* among others were (1) refusal of binding instructions for defendant. (3–5) Refusing defendant's fourth, sixth and seventh points, which points are as follows : " 4. The evidence shows that the proximate cause of the collision in which the plaintiff was injured was due to the act of a mere volunteer, for which act the carrier was not responsible, as it was not within the scope of his employment or done while in the company's service, and therefore she cannot recover. 6. That if the jury believe from the evidence that the plaintiff must have been injured in an effort to leave the car while in motion, that so doing was such contributory negligence as will prevent a recovery in this action, in default of evidence of negligence on the part of railway company, and the verdict must be for the defendant. 7. That in default of evidence of any contractual relation between the plaintiff and her father she cannot recover for loss of earning capacity, but can only recover for the moneys expended by herself and for the physical pain and suffering she has sustained."

*C. M. Clement*, with him *Voris Auten*, for appellant.—There is no negligence on the part of a carrier, if the injury would not have happened but for the intervening negligence of a third party: Ebright v. Mineral R. & M. Co., 2 Mon. 126.

Where a servant is employed at a particular place to do a fixed service at a set price, upon his completing his day there, is no longer an employee of the company, but is an employee only when at his place of work: McNulty v. Penna. R. R., 182 Pa. 479.

Nor can the intention of an employee to serve his master

avail and charge the master with the responsibility for his wrongful acts: Marion v. C. R. Co., 8 Amer. & Eng. R. R. Cas. 177.

If a servant by his negligence does damage, the master is answerable, but the damage must be done while he is actually employed in his master's service : Allegheny R. R. Co. v. Mc-Clain, 91 Pa. 442; Baird v. Pettit, 70 Pa. 483.

When there is no evidence that a servant was acting in the line of his duty and within scope of employment, it is error to submit the question to the jury: Walker v. R. R. Co. 59 Amer. & Eng. R. R. Cas. 607.

*W. H. M. Oram*, with him *P. A. Mahon* and *Jno. W. Gillespie*, for appellee.

OPINION BY PORTER, J., February 19, 1898 :

This suit was brought to recover damages for personal injuries sustained by the plaintiff in a collision, which occurred on the line of the defendant company, on June 30, 1895. The plaintiff became a passenger on one of the defendants' electric cars, leaving Mt. Carmel about 6 o'clock in the evening to go to her home at Shamokin. When the car reached a village called Green Ridge it lost its power of traction through what is known in electrical science as a " shunted field coil," the effect of which was to cause the wheels to revolve rapidly without propelling the car.

One William Visick, noticing the difficulty under which the car was laboring, went to the assistance of the motorman, put ashes upon the track to assist the car, and when the car was finally stopped, went on foot to the car barn, got out an empty car and started to the relief of the stalled car. In descending the grade towards the latter Visick lost control of his car, and there ensued a collision of sufficient force to injure some of the passengers in the stalled car. Among the passengers injured was the plaintiff.

It was contended by the plaintiff that the defendants were responsible for the acts of the man Visick, through whose negligence the collision occurred. It was answered by the company that Visick was *not an employee at the time of the accident;* that the plaintiff contributed to her injury by her negligence in

attempting to jump from the car, and that there was no evidence of the earning capacity of the complainant upon which to base a verdict.

Visick was employed by the defendants at their car barn as a blacksmith, and as a shifter and cleaner of cars. His hours of daily duty, as alleged by the defendants, were from seven in the morning until five at night. This accident occurred at about half past six in the evening. It appears further that at times he acted as motorman, on a branch line and occasionally on the main line. He was asked, " Q. You work on cars on the main line at times? A. Yes, sir, but very seldom, I might have worked four or five times on the main line prior to the accident. Q. How long prior to the accident did you work on the main line? A. About a month or so." He further denied on cross-examination that the cars in the car barn were under his charge, but when asked in respect to the car which he went after to relieve the stalled car, " Q. Then you went up there and took the car out from those cars you had in charge? A. Yes, sir," and again " Q. And it was your specific duty to take charge of the cars when they were brought into the barn, wasn't it, to clean them? A. Yes, sir. Q. They were under your charge until they were taken out, weren't they? A. I suppose they were. Q. Then you went up and took the car out of the barn down towards where the car had stopped, did you? A. Yes, sir, I did. Q. And run into the car that the passengers were on? A. I did."

It will thus be seen that Visick admits a certain custody of the cars and that at times he was entrusted with their management as motorman and with the shifting of them near and about the barn. What he attempted to do was in the interest and for the benefit of his employers. If he had been present at the time the car of the defendants was stalled, and had stood idly by without attempting to assist the other employees of the company in getting the car in motion to facilitate the transportation of the passengers, such conduct must have met with condemnation from his employers. Nor can it be doubted that if his acts had not resulted in the damage disclosed, they would have been adopted and approved by his employers.

His act in going to the barn for a car was, therefore, not that of a total stranger. Moreover, it was done with the knowledge

and acquiescence of the motorman. When Visick announced his intention of going for the relief car no objection was made, and the motorman abandoned his efforts to start his car until Visick should return.

This acquiescence of the motorman, was sufficient evidence of Visick's authority to take the case to the jury. The motorman could have objected to Visick's act. The former was, in the emergency, the representative of the company to see that everything proper was done in aid of the disabled car, and that no unnecessary delay or danger of injury was occasioned the passengers. There could be but one impression upon the minds of the passengers who sat quietly in the car, namely: that Visick was acting under the permission of the motorman in charge of the car.

There was no error in refusing the defendants' sixth point. For the court to say, that, if the plaintiff in a moment of sudden peril jumped from the car and was thus injured, she cannot hold the defendants liable for the results of their negligence, would be going too far. While the act of jumping, if attempted under such circumstances, might not have been the part of wisdom, it is not to be judged by the same standard as acts done when no sudden danger threatens.

As to the alleged absence of evidence of earning capacity on the part of the plaintiff, it may be said that there was the uncontradicted testimony of her brother, that her services were worth before the injury the sum of $5.00 per week, and that after her injury it would not be worth more than one fifth of that amount. This was sufficient to warrant the trial judge in refusing the defendant's seventh point.

The second assignment of error was withdrawn at the argument of the case. The remaining assignments are dismissed and the judgment of the court below is affirmed.