# Short *v.* Delaware & Hudson Company, Appellant.

*Carriers—Common carriers—Railroads—Authority of station agent—Perishable goods.*

1. Where it appears that a freight station agent of a railroad company has extensive powers to dispose of perishable goods which a consignee refused to accept, in such manner as he considers to the best advantage of the company, he may bind the company by an agreement with a consignee that if the latter will pay the freight due on carloads of strawberries in a damaged condition and take the berries and sell them at the best price he can get, the railroad company will pay any loss sustained by reason of the condition of the berries.

2. The extent of the authority of an agent may depend sometimes on the nature of the agency, and may be extended or varied on the ground of implied authority, according to the pressure of the circumstances connected with the business with which he is intrusted. The emergency of an accident, or an unusual condition which requires prompt action, may invest the representative of the company highest in authority who is then present with power to do such things as are reasonable to meet the emergency.

Argued March 4, 1909. Appeal, No. 33, March T., 1909, by defendant, from judgment of C. P. Lackawanna Co., March T., 1907, No. 839, on verdict for plaintiff in case of John H. Short v. The Delaware & Hudson Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit for loss resulting from the deterioration in value of perishable goods. Before NEWCOMB, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $450.99. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*W. J. Torrey,* of *Welles & Torrey,* for appellant, cited: Weldon v. Traction Co., 27 Pa. Superior Ct. 257; Lauer Brewing

Co. v. Schmidt, 24 Pa. Superior Ct. 396; Maxson v. Mich. Cent. R. R. Co., 117 Mich. 218 (75 N. W. Repr. 459); Savannah, etc., Ry. Co. v. Humphreys, 114 Ga. 681 (40 S. E. Repr. 711).

*Samuel B. Price,* for appellee, cited: Bank of Pennsylvania v. Reed, 1 W. & S. 101; Adams Express Co. v. Schlessinger, 75 Pa. 246; Parker v. Ins. Co., 129 Pa. 583; Tanner v. Oil Creek R. R. Co., 53 Pa. 411; Brooke v. N. Y., etc., R. R. Co., 108 Pa. 529; Chamberlain v. McClurg, 8 W. & S. 31; Burkholder's App., 105 Pa. 31; Town of Brandon v. Jackson, 52 Atl. Repr. 114.

OPINION BY PORTER, J., October 11, 1909:

The assignments of error raise but a single question: Did the court err in submitting to the jury the question of the existence of a contract, alleged to have been made by the freight agent of the defendant at Scranton, which was binding upon the defendant? Three carloads of strawberries, two of which had been shipped from South Carolina and the other from North Carolina, arrived at Scranton over the railroad of the defendant company; all of the cars had been long delayed in course of transportation, and when they reached their destination in the freight yard of the defendant a large part of the fruit was rotten and all of it was in very bad condition. The plaintiff and Mr. Payne, who was the freight agent of the defendant at Scranton, examined the strawberries, and both testified that the fruit was in very bad condition. All of the facts above stated were undisputed. The verdict of the jury determined the following facts, viz.: the plaintiff declined to accept the cars unless the company would agree to make good any loss; whereupon Payne, the freight agent of the company, agreed that if the plaintiff would pay the freight and take the berries and sell them at the best price he could get, that the defendant company would pay any loss sustained by reason of the condition of the berries. The plaintiff accepted this proposition and paid to the agent of the defendant freight amounting to $608.82. The plaintiff was only able to realize from the sale of the berries the sum of $771.50. The plaintiff then brought this action upon the alleged contract of the company made by Payne, the

freight agent. There was a conflict of evidence as to what arrangement had been made between the plaintiff and the freight agent of the defendant company, and the court submitted that question to the jury, with instruction that the burden was upon the plaintiff to satisfy them by the weight of the evidence that the contract which the plaintiff alleged had actually been made. The court limited the amount which the plaintiff could in any event recover to the amount which had been actually paid for the berries at the point of shipment plus the freight, less the amount which plaintiff had realized from the sale of the fruit. There was no dispute that the plaintiff would have realized a considerable profit if the berries had been delivered at Scranton in good condition, but the court ruled that under the contract as proved, if the jury found that there had been such a contract the plaintiff could recover only his actual loss. The defendant does not complain of the amount of the recovery, but asserts that the freight agent had no authority to make the contract upon which the plaintiff relied and that plaintiff was not entitled to recover any sum whatever.

The evidence produced by the defendant disclosed that Payne was the freight agent of the defendant at Scranton, and that he had rather extensive powers. He was the head man in his department at that place. He testified that when goods of a perishable nature arrived in a damaged condition, which was not satisfactory to the consignee, "We first tried to make some arrangement with the consignee to handle them. To handle them themselves, to accept them, take them and pay the charges in the regular way, and put in a claim. . . . If they positively refused to accept them we turned them over to a dealer to handle them for our account, and in that case we tried to get another party entirely to handle the goods. Q. As I understand it you have charge of all the freight that is received here for delivery to any consignee? A. At the D. and H., yes, sir. Q. And that includes not only the delivery but the collection of freight charges? A. Yes, sir. Q. And the making of terms and conditions upon which the delivery will be made is wholly in your hands? A. If the goods were re-

fused, the agent is then authorized to dispose of them to the best advantage. Q. You have exclusive control of anything in the way of credit, and it is for you to determine whether the freight charges shall be paid spot cash or whether time shall be given, or anything of that kind? A. It has been the custom to allow the agent that; it was at that time. Q. So that generally speaking the terms and conditions upon which you make delivery and collection are wholly with you? A. Yes, sir." It thus appears that this agent had authority to dispose of goods, which a consignee refused to accept, as he considered to the best advantage, and that he had authority to determine the conditions upon which goods were to be delivered to a consignee. The extent of the authority of an agent may depend sometimes on the nature of the agency, and may be extended or varied on the ground of implied authority, according to the pressure of the circumstances connected with the business with which he is intrusted. The emergency of an accident, or an unusual condition which requires prompt action, may invest the representative of the company highest in authority who is then present with power to do such things as are reasonable to meet the emergency: Bank of Pennsylvania v. Reed, 1 W. & S. 101; Quinn v. Railway Company, 7 Pa. Superior Ct. 19; Heinrich v. Pittsburg Railways Company, 36 Pa. Superior Ct. 612; Terre Haute, etc., Railroad Company v. McMurray, 98 Indiana, 358; Northern Central Railway Company v. State, 29 Maryland, 420. The contract asserted by plaintiff, if it was made, related to a branch of the business which the defendant company had committed to the control of the agent with whom the plaintiff dealt, and that agent had authority to make reasonable regulations touching the business: Adams Express Company v. Schlessinger, 75 Pa. 246; Tanner v. Oil Creek Railroad Company, 53 Pa. 411; Chouteaux v. Leech & Co., 18 Pa. 224. When the carloads of berries which had been shipped in good condition were tendered by the defendant company to the consignee in a damaged condition and the consignee refused to accept the same, the representative of the company then present, highest in authority, was bound to meet the conditions thus presented. The consignee presumptively had a well-founded

claim for damages against either this line or some connecting carrier. The defendant company might, it is true, escape liability by showing that the delay which caused the damage had not occurred upon its part of the line of transportation: American Express Company v. Second National Bank, 69 Pa. 394. There was, however, no time to investigate as to what particular carrier was liable. The berries had already greatly deteriorated in value because of the long delay in transportation, and the delay of another day might render them absolutely worthless. To hold goods until some general officer of the company could be summoned, or even communicated with, might result in their total loss. These facts had no doubt been taken into consideration by the defendant company when it conferred upon the agent with whom the plaintiff dealt, as that agent himself testified, authority to dispose of perishable goods, which a consignee declined to accept, "to the best advantage." The contract, which the jury found that this freight agent did make, resulted in his at once receiving from the plaintiff the freight charges, amounting to $608.82, and, by inducing the plaintiff to act promptly, the sum of $771.50 was realized from the sale of the then rapidly decaying fruit. The plaintiff recovered in the court below the sum of $895.85; less than $300 more than the amount of the freight which he paid the agent at the time the contract was made. We are of opinion that, in view of the broad powers which the agent testified had been conferred upon him by the defendant company, the case was for the jury; as there was no doubt under the evidence of the existence of an emergency which demanded prompt action.

The judgment is affirmed.