THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.* THE STATE, use of JEANETTE WOODWARD.

*Termination of the relation of Employer and Employé—Evidence—Act of 1825, ch. 117, and Art. 5 sec. 12 of the Code—Estoppel—Measure of Damages.*

W. a conductor of a freight train on the B. & O. R. R. had his leg crushed by a collision with the train immediately following his. The collision occured near the Point of Rocks about 4 o'clock in the morning. As soon as practicable after the accident, the injured man was placed on the tender of the nearest engine and carried to the Point of Rocks, accompanied and attended by his friend the conductor of another train, who stopped with him at that station. As soon as he arrived there, the agent of the railroad company was aroused, the leg of the injured man was bound up with twine to stop the bleeding, a mattress procured on which he was taken to a Hotel and stimulants administered to him. The nearest physician was immediately sent for, and arrived in a short time; he removed the twine, put on a field tourniquet, bandaged the leg and placed a board under it to keep it in position. At this time he had bled freely, and his pulse was feeble; but he subsequently rallied and the physician stated he was in a fair way to recover, when he was put in the baggage car of the next eastern bound passenger train, which arrived sometime after seven of the same morning, to be taken to Frederick, a distance of thirteen and a half miles, where his relations and friends lived. The same party who had remained with him, attended him in the transit to Frederick where he arrived in about two hours. On his arrival he was in a dying condition from hemorrhage which occurred during the passage and died shortly thereafter. By a rule of the railroad company, an employé had no right to claim compensation from the company "when disabled by sickness or other cause;" and any allowance they might make to him in such case was to be "as a gratuity only." In an action for damages against the railroad company by the widow of the deceased, it was HELD:

Balto. & Ohio R. R. Co. *vs.* State, use of Woodward.

1st. That the duty and responsibility of the company to take care of the injured man, ceased when he was thus attended to, and placed at a hotel in charge of a physician.

2nd. That the injured man in relation to his transportation from the Point of Rocks to Frederick, occupied the position of a stranger to the company, in like condition. They were not bound to carry him gratuitously, nor to procure a physician, or any one to accompany and attend to him on the way.

A party will not be allowed to impeach the credibility of his own witness.

Where the record transmitted to the Court of Appeals, shows that an objection was raised to the admissibility of evidence offered generally in a case tried before a jury, and was overruled or sustained by the Court, the appellate Court must assume that the testimony was admitted or rejected by that Court because it was pertinent and relevant or otherwise, to the issue made by the pleadings. In such case it necessarily appears by the record that the point was decided by the Court which tried the cause, and it may therefore be examined and decided by the Court of Appeals.

By the custom and regulations of a railroad company, trains in convoy were equipped, each with one engineman, one fireman, one conductor and one brakeman. The conductor of a train in convoy, on such road, had his leg crushed by collision with the train immediately following his, and died shortly thereafter. In an action against the railroad company by the widow of the deceased to recover damages for his loss, it was HELD :

That if he had knowledge of this custom and practice at the time of his employment and afterwards, and with such knowledge continued for eight or nine months in his employment, as conductor on trains in convoys thus equipped, and also knew that the train following his on the night of the collision was equipped in the same manner, such knowledge on his part would prevent a recovery on account of any supposed deficiency in equipment in this respect.

In an action against a railroad company, by a widow to recover damages for the killing of her husband by a collision of trains of the defendant, he being at the time in the employ of the defendant, the jury in assessing the damages, if they find for the plaintiff, must estimate the reasonable probabilities of the life of the deceased, when injured, and give the plaintiff such pecuniary damages as will compensate her for losses already suffered as the direct consequence of her husband's death, and also for the prospective losses she will suffer as the direct consequence of such death during the period, the jury, under all the circumstances, shall deem to be the probable duration of her life.

APPEAL from the Circuit Court for Frederick county.

This suit was instituted against the appellant by the appellee to recover damages for the killing of Charles Woodward, the husband of the equitable plaintiff. The facts of the case, together with the exceptions to evidence taken by both sides, are sufficiently stated in the opinion of the Court.

*Exceptions to Prayers.*—The plaintiff offered the following prayers:

1. If the jury shall find from the evidence that on or about the 24th day of September, 1869, a collision occurred on the road of defendant, between two of its freight trains, which caused the death of Charles Woodward, then in defendant's employ on one of said trains as conductor, and that said collision resulted from the failure of the defendant to use reasonable care in providing machinery proper and suitable for the working of said trains with a reasonable regard for the safety of the employés thereon; or, if having machinery in itself proper for that purpose, failed to provide the number of hands sufficient to operate the same with a reasonable regard for the safety of said employés, and that said collision resulted from the want of such number of hands, then the plaintiff is entitled to recover, notwithstanding the said Woodward at the time of said collision was in the employ of the defendant.

2. That if the jury shall find from the evidence that a freight train of the defendant ran into another of its trains in advance of it, on which Woodward was employed, and by which collision he was killed, and that by the time-tables and regulations of the defendant said colliding train was required to travel so closely behind the train that was struck, as to be inconsistent with reasonable care for the safety of those employed on the latter train, and that said collision was attributable to said colliding train running so closely after the one in advance of it, according to said time-tables and regulations, then the plaintiff is

entitled to recover, notwithstanding said Woodward at the time of said collision was an employé of the defendant.

3. That if the jury shall find from the evidence that the death of Woodward was the result of a collision caused by the incompetency or carelessness of the engineer in charge of one of the defendant's engines, and that the defendant did not use reasonable care in the selection of said engineer, then the plaintiff is entitled to recover, notwithstanding said Woodward was, at the time of said collision, in the employ of the defendant.

4. That if the jury shall find from the evidence, that the injury to Woodward was caused by the negligent or careless running of his engine by one of the defendant's engineers, and that said engineer was not skilful and competent as an engineer, then the plaintiff is entitled to recover, notwithstanding said Woodward was an employé of the defendant, unless the jury shall further find that the defendant had used reasonable care and diligence in the selection of said engineer ; and further to instruct the jury, that the management and conduct of said engineer of his train, at the time of the said injury, constitutes a part of the testimony, to be taken with all the other evidence, from which they may draw their conclusion, as to whether said engineer was in fact a skilful and competent engineer or not.

5. That if the jury shall find from the evidence, that the decedent, Woodward, was killed by a collision between the defendant's trains, and that in the happening of said collision, said Woodward was himself not entirely without fault ; but shall further find, that the negligence of another employé of the defendant was the proximate and direct cause of the injury to Woodward, that then the degree of fault in Woodward was not such negligence on his part as will prevent the plaintiff from recovering in this action.

6. That if the jury shall find from the evidence, that the collision which resulted in the death of Charles Wood-

ward, was not caused by the negligence of the defendant, the plaintiff is not entitled to recover, unless the jury shall further find that the death of said Woodward was subsequently caused by the gross negligence of the defendant, or its agents, acting in the course of their employment.

7. That if the jury shall find that the deceased, Woodward, was severely wounded and rendered helpless by a freight train of the defendant, then from whatever cause the collision occurred, it thereupon, at once became the duty of the employés and agents of the defendant to take him in charge, and carefully convey him to where he could receive proper care and treatment; and shall further find that said agents and employés, after said collision, did take said Woodward into their charge; and that while so in their charge, and in the course of removing him to the care and custody of his friends, they undertook to convey him to Frederick city, and in the course of such removal grossly neglected the instructions of a competent physician given to said employés, which were such as an ordinary person could easily perform, and that by reason of such neglect said Woodward suffered great loss of blood, which an observance of said instructions would have prevented, and that such loss of blood was the proximate cause of his death, then the plaintiff is entitled to recover.

8. That if the jury should find for the plaintiff, then in assessing the damages they are to estimate the reasonable probabilities of the life of the deceased, Woodward, when injured, and give the equitable plaintiff, Jeannette Woodward, such pecuniary damages as will compensate her for losses already suffered, as the direct consequence of said Woodward's death, and also for the prospective losses she will suffer as the direct consequences of said death during the period that the jury, under all the circumstances, shall deem to be the probable duration of her life.

9. That if the jury shall believe, from the evidence, that Charles Woodward was injured by a collision of trains in

the employ of the defendant, in September, 1869; that after the infliction of said injury by said collision, the said Charles Woodward was taken in charge by the employés of the defendant, for the purpose of removal to Frederick; that in the course of such removal said Charles Woodward suffered such a loss of blood from the wound inflicted by previous collision, as to be the immediate, direct and proximate cause of his death; that he suffered such loss of blood by the negligence, carelessness or ignorance of any of the employés of said company engaged in the course of their employment; that then their verdict must be for the plaintiff, unless the jury shall find from the evidence that the said Woodward was, at the time of the suffering of said loss of blood by the negligence of the defendant's servants, actually engaged in the services of the defendant and in its employ.

The defendant then offered the following prayers:

1. That to entitle the plaintiff to recover damages for the death of Charles Woodward, resulting from the injuries to said Woodward, caused by the collision spoken of by the witnesses, the plaintiff must show to the satisfaction of the jury:

1st. That said collision was directly caused by the want of ordinary care and prudence on the part of the employés of the defendant on the train causing the collision.

2nd. That said employés were incompetent for their positions.

3rd. That the defendant did not use ordinary and reasonable care in the selection of the said employés.

4th. And even then the plaintiff cannot recover if the jury shall find from the evidence, that the injuries resulting from said collision could have been avoided by the exercise of reasonable care and caution on the part of the decedent.

2. That if the jury shall be satisfied from the evidence that Charles Woodward, at the time and place, when and

where he suffered the injury complained of, was a conductor of a freight train in the employ of the defendant, and acting in his capacity as such, and that said injury was occasioned by the collision of engine No. 293 running into his train, crushing his leg, and from which injury he died, and that said Charles Woodward, by the negligence and carelessness of the engineman of engine No. 293, and the other servants of the company on said train, sustained the injury from which he died, and for which this suit was instituted, then that the said plaintiff is not entitled to recover, unless the jury shall believe from the evidence that in selecting the employés or servants, through whose negligence the accident occurred, the defendant did not use reasonable care in procuring for its operations faithful and competent employés, and that the plaintiff has offered no evidence that the defendant did not exercise all reasonable care in the selection of the said servants, or in procuring for its operations faithful and competent employés, and therefore their verdict must be for the defendant.

3. That if the jury shall be satisfied from the evidence that Charles Woodward, at the time and place, when and where he suffered the injury complained of, was a conductor of a freight train in convoy of Coal Trains No. 3 westward, in the employ of the defendant, and acting in his capacity as such, and that after the accident occurred by which said Woodward was injured, he was taken to the Point of Rocks, placed under the care of a physician and properly treated by him, and afterwards placed on the cars and in care of Thomas J. Stoddard, a conductor of a freight train in the convoy of trains known as Coal Trains No. 3 westward, conveyed to the home of his grandfather in Frederick city, and shall further believe that the said Charles Woodward died from hemorrhage, owing to the negligence or inattention of the said Stoddard, then the plaintiff is not entitled to recover, unless the jury shall further find that in selecting the employé through whose

negligence or inattention the hemorrhage and consequent death occurred, the defendant did not use reasonable care in the selection of said employé, and that the plaintiff has offered no evidence that the defendant did not exercise all reasonable care in the selection of said servant, and therefore their verdict must be for the defendant.

4. That if the jury shall be satisfied from the evidence that Charles Woodward, at the time and place, when and where he suffered the injury, was a conductor of a freight train in the employ of the defendant, and acting in his capacity as such, and was injured by the carelessness and negligence of a fellow-servant, and that after the accident was taken to the Point of Rocks and placed under the care of a competent physician, and was properly treated by him for said injury; and shortly afterwards, at his own request and desire, taken to the cars and placed under the charge and care of Thomas J. Stoddard, to be conveyed to the home of his grandfather in Frederick city; and that said Stoddard received full and particular directions from the physician for the treatment of said Woodward, while being thus conveyed to Frederick city; and shall further believe that the said Charles Woodward died from hemorrhage shortly after reaching Frederick, resulting from the negligence, inattention or ignorance of the said Stoddard, then the plaintiff has offered no sufficient legal evidence to the jury to charge the defendant with the negligence, inattention or ignorance of the said Stoddard, and their verdict must be for the defendant.

5. That if the jury shall find from the evidence in this cause, that Charles Woodward, the decedent, was an employé of the defendant, and that whilst in the actual discharge of his duties received the injury of which he died, and shall further believe from the evidence said decedent had knowledge of the rules and regulations of said defendant as contained in the Book of Instructions of the Baltimore and Ohio Railroad, and in No. 3 Time

Tables, Baltimore and Ohio Railroad, May 9th, 1869, as offered in evidence, and shall further find that said decedent knowingly violated said rules and regulations, then it was conclusive evidence of negligence on his part; and if he was injured in consequence thereof, the plaintiff is not entitled to recover in this action, and their verdict must be for the defendant.

6. That if the jury, shall find from the evidence that the decedent, Charles Woodward, at the time and place, when and where he suffered the injury complained of, was conductor of a freight train in the employ of the defendant, and acting in his capacity as such; and shall further find, that said decedent was lying on the bumper of the last car in his train on his left side, with his arm under his head, and his right foot resting in a coupling-link attached to the bumper-casting; and shall further find, that by the rules and regulations of said defendant, as contained in the Book of Instructions, under the division of Duties of Freight Trains conductors in the 10th and 12th rule, "that the proper station for conductors, whilst the train is in motion, is on the rear end of his train, and on the top of the cars, except in empty coal hoppers," and the decedent knowingly violated said rules and regulations, and but for such violation of said rules, would not have been injured, then it is conclusive evidence of negligence on his part, and the plaintiff is not entitled to recover in this action, and their verdict must be for the defendant.

7. That if the jury shall believe from the evidence in this cause, that the decedent, Charles Woodward, was, at the time of the accident, employed by the defendant as a conductor of a freight train, drawn by Engine No. 125, on the railroad of the defendant, and along with others, was attached to a convoy of trains, known as "Coal Trains No. 3," westward, and that said decedent and others employed with said convoy of trains, were engaged in the common employment of running and operating said con-

voy of trains, on the first division of said railroad, on the day when and where said accident is alleged to have occurred, and that said decedent was on that day riding on one of the cars of the train, of which he was the conductor in the usual course of his employment, and that as said train was approaching that portion of said railroad, known as "Callico Rock Grade," said Woodward was lying on the bumper-platform of the rear car of his train asleep, with his leg hanging on the bumper-casting, with his right foot resting in a coupling-link attached to the bumper-casting, and with but one light burning; and shall further believe, that while thus asleep, with lights thus out on his train, and with his leg hanging over the bumper-casting as aforesaid, said accident occurred by the collision of Engine No. 293, running into his train, crushing his leg, and from which injury he died. And if the jury shall further find, that said decedent, as conductor and employé of said defendant, was obliged by the rules and regulations of said defendant as offered in evidence, at night to keep two red lights and one white light burning on his train when followed by other trains in said convoy, and by said rules and regulations was prohibited from sleeping or lying down on the platforms of said cars whilst in motion, and that said decedent had full knowledge of said rules and regulations, and but for such violation of such rules and regulations the injury complained of would not have happened, then the proof of negligence and carelessness on the part of said decedent is conclusive and is in law such want of due care and caution on his part as will prevent the plaintiff from recovering in this action, and their verdict must be for the defendant, even though the jury shall believe that said decedent received the injury by the negligence of his co-employés.

8. That if the jury, shall find from the evidence that the decedent, Charles Woodward, at the time and place when and where he suffered the injury complained of, was

a conductor of a freight train in the employ of the defendant and acting in his capacity as such, and knew another train was following him in said convoy as spoken of by the witnesses, and shall further find that said decedent was lying on the bumper of the last car in his train on his left side with his arm under his head, and his right foot resting in a coupling-link attached to the bumper-casting, lying asleep on the bumper of his car, then that such acts of said decedent constitute a want of ordinary care, and that but for such want of ordinary care the injury from which he died would not have happened, then the plaintiff is not entitled to recover, in this action, and their verdict must be for the defendant, even though the jury shall believe that the engineman of engine 293, and the other servants on his train were guilty of negligence and want of ordinary care.

9. That if the jury, shall believe from the evidence, the facts of the employment, collision and injury of the decedent, Charles Woodward, and that it was the custom or practice and regulation of the defendant to equip its trains in convoy with one engineman, one fireman, one conductor and one brakeman, at the time the decedent was employed as conductor of freight trains, and said decedent had knowledge of said custom, practice and regulation, both at the time and after his employment; and that he continued in his employment as conductor for eight or nine months, with such a crew of men running in convoys of trains equipped in the same way, and also knew the train of which Geo. Thompson was engineman, and following him in convoy the night the collision spoken of by the witness occurred, was equipped in like manner, then such knowledge on the part of the decedent is a bar to the recovery of the plaintiff in this action on account of any supposed deficiency in equipment.

The Court granted the plaintiff's sixth, seventh and eighth prayers, and rejected the others; and granted the

first, second and ninth prayers of the defendant, and rejected the others; both sides excepted. The jury rendered a verdict in favor of the plaintiff for $8000, and judgment was entered accordingly. The defendant appealed.

The cause was argued before BARTOL, C. J., STEWART, MILLER and ALVEY, J.

*John K. Cowen, Charles W. Ross* and *Thomas Donaldson,* for the appellant.

It is well settled by the decisions of this Court that a master is not liable to his servant for injuries received while in the employment of the master, caused by the carelessness and negligence of a fellow-servant, unless he has been negligent in the selection of the servant in fault. Tested by this rule, there certainly was no error in the Court's rejection of the plaintiff's first prayer. There was no evidence that the machinery in use was not proper, or that the equipment of the train was not sufficient to operate the same with a reasonable regard to the safety of said employé. The prayer was defective also, because it did not submit any other question to the jury than a failure to provide proper machinery for the working of said trains, and also insufficiency of equipment.

There was no evidence in the cause to sustain the plaintiff's second prayer, and the Court in ruling on the plaintiff's third bill of exceptions excluded the testimony.

There was no evidence to sustain the plaintiff's third prayer. In granting the defendant's second prayer, the Court instructed the jury there was no evidence offered by the plaintiff that the defendant had not used due and ordinary care in the selection of its servants, and its rejection was proper.

The plaintiff's fourth prayer, was properly rejected. There was no evidence before the jury either as to the

incompetency of the engineer or that the defendant had not used due care in his selection.

The fifth prayer of the plaintiff was properly rejected, as it is based neither on evidence nor law applicable to the case.

The sixth prayer of the plaintiff is taken from the case of *Price*, 29 *Md.*, 420; but it is not applicable to the case at bar. This is not the case of a stranger to the defendant, and is not controlled by the same principles governing cases where the same relations exist as in the cases of master and servant.

In the case of a stranger ordinary care and caution, are required to prevent injury. In the case of a servant, all that can be required of the master, and for the neglect of which he is responsible to his servant, is that he shall use due and reasonable care in providing safe and sound machinery, and the same care in the selection of fellow-servants of competent skill and prudence. *O'Connell vs. Balto. & O. R. R. Co.*, 20 *Md.*, 212; *Wonder vs. B. & O. R. R.*, 32 *Md.*, 411; 1 *Redfield on Law of R. R.*, 517; *Shauck vs. North. Cent. Ry. Co.*, 25 *Md.*, 462.

If the decedent was in the employ of the defendant at the time the injury complained of occurred, then the well-known principle applies. If he was not in the employ of the defendant, and his death was caused by the negligence of some one else, certainly the defendant ought not to be held responsible for any other person's negligence.

The prayer therefore ought not to have been granted.

For the same reasons there was error in granting the plaintiff's seventh prayer.

It ignores the fact that the decedent was in the employ of the defendant, and that the injury was received while in the actual discharge of his duties. It ignores the fact that the decedent was carried to a place of safety and placed in the charge of a physician. It ignores the fact that it was the act of the decedent himself in requesting

his removal to Frederick city, to the care and custody of his friends. It ignores the fact that the person who is alleged to have neglected the instructions of the physician was of decedent's own selection.

It is objectionable further because it is an application of a principle of law to this case utterly uprooting all previous decisions applicable to the case of master and servant; if the company provided sound and suitable machinery and used due and reasonable care in the selection of fellow servants, it did what the law says is its *whole* duty to do.

After the master has provided sound machinery and selected competent employés, his duty ceases; if injury results to the employé, there is no liability; he cannot recover, even if the injury resulted from the negligence of a co-employé.

The defendant's first and second prayers embody the law as applicable to the case at bar, and were properly granted by the Court. *Shauck vs. N. C. Ry. Co.*, 25 *Md.*, 462; *O'Connell vs. B. & O. R. R.*, 20 *Md.*, 212; *Wonder vs. B. & O. R. R.*, 32 *Md.*, 411.

The defendant's third prayer is similar to its second prayer. It simply presents the fact that if the decedent was an employé of the defendant, and was injured by the carelessness of a co-employé or fellow-servant, the master is not responsible; the only difference is as to the individual fellow-servant who was guilty of negligence. The prayer is sustained by the authorities, and ought to have been granted.

The defendant's fourth prayer is based upon the hypothesis that the act of removal from the Point of Rocks to Frederick was the act of the decedent himself; that the party who had him in charge was of his own selection, and if the agent of any one, was the agent of the decedent himself.

The Court rejected those prayers of the defendant which affirmed that a wilful violation of the written rules of the

company by Woodward would bar a recovery if such violation contributed to the injury. Is it not strange then that an intentional disregard of the employer's instructions is not negligence in law, and yet the non-observance of a physician's instructions is such negligence?

There was error in granting those prayers of the plaintiff, which affirmed the liability of the company for the acts of a servant in caring for a wounded companion, without any regard to the competency of that servant, and in rejecting the prayer of the defendant, asserting the opposite doctrine.

But even upon the theory of the plaintiff, viz: that the moment Woodward was injured he ceased to be an employé and that it thereupon became the company's duty to convey him to a place "where he could receive proper care and treatment," and that for a neglect of this duty it is responsible, that responsibility ended at the Point of Rocks, where he was put under the care of a physician. Up to that place there is no claim of a want of care, or that improper treatment before arriving at that point caused the death. From that place he is removed at his own request, with the approval of the physician, and he selects Stoddard, his friend, to go with him to Frederick. Stoddard obtains leave of his superior officer, and is directed to accompany him. Whatever was done after the Point of Rocks was reached, was done by his request. The railroad employés assenting, as was natural, to that request when approved by the physician. Surely then, even upon the plaintiff's theory, the company's liability ended when he was thus placed in charge of a physician.

The agents of the company had placed him in the care of a physician, and in the language of the seventh prayer, had carefully conveyed him to the Point of Rocks, a place "where he could receive proper care and treatment." Must they do more? Must they carry him to his home or friends? If careful taking to a place for "proper treat-

ment," fills the measure of the company's duty, *that was done.* If then at the request of the injured man, the agents of the company go further, and attempt to take him to his friends, the company cannot be liable, because it was no part of their duty so to do; it was an act of friendship and kindness, and not the performance of a legal duty for an improper discharge of which the company could be made responsible.

*William P. Maulsby Jr.* and *John Ritchie,* for the appellee.

If it was the duty of the corporation, which is the master, "to take Woodward in charge, and carefully convey him to where he could receive proper care and treatment," by whom was this duty to be performed? A corporation can act only through agents and its agents in such an emergency must be such of its employés as are upon the scene, and within whose range and power to assist, the occasion for the performance of this duty arises.

Is this an onerous duty? Is it too much to require of these great corporations, amply supplied with men and resources, that the man whose limbs are lacerated and life endangered in the prosecution of their mammoth business should not be left to perish like a butchered animal, but should be treated like a human being, on whose life, wife and children depend for support? Human life is not yet cheap enough for such a doctrine.

But, it is replied, admitting that the defendant was obliged to take Woodward to a place where he could be taken care of, it does not follow that the railroad company was obliged to take him to Frederick; that he was conveyed to the Point of Rocks, and in carrying him to Frederick, it was done at his request, or was beyond the duty of the employés who took him there, and in either case the company is not responsible. By its own election the company recognized Frederick city, only some twelve

miles off, and along the road where Woodward's grand-father lived, as a suitable, convenient and proper place for his shelter and treatment in his precarious condition, and undertook to convey him there, and so undertaking, it was bound to convey him with the care suited to his condition. The fact that Woodward requested to be taken to Frederick does not affect the liability of the company. It was a natural wish, and the proper place for him to be. There he could receive the nursing attention and sympathy of friends.

Accordingly Stoddard and other employés as agents of the company, and in the discharge of the duty resting upon the master in whose place they now stood, in the exercise of their discretion undertook to, and did convey him on the company's cars, and over the company's road to his friends at Frederick; and from the moment of the accident to the time of this delivery, he was in the hands of the company's agents.

The taking Woodward to the Point of Rocks is not a distinct and completed stage in his removal. Stoddard promised to take him to Frederick a moment after the accident, and as the Point of Rocks was the next station, and the place at which he could be transferred to the passenger train going east to Frederick, the freight train continuing its westward run, left him there, where he remained till the passenger train arrived, and on which William P. Gorsuch, supervisor of trains from Baltimore to Martinsburg, having been telegraphed to by Stoddard of the accident, came down, who took supervision of the removal of Woodward, and permitted it with his express sanction.

As to whether the agents of the company were guilty of gross negligence towards Woodward while conveying him to Frederick, it is not material to inquire. That was a question for the jury to determine.

The responsibility of the appellant for the conduct of its agents, as bearing upon the company's duty to Woodward,

and his treatment by those agents, is generally illustrated by the following authorities:

*Penn. R. R. Co. vs. Vandiver*, 42 *Penn.*, 365 ; 1 *Redf. on Rail.*, 510, *sec.* 130, *ed.*, 1867 ; *Goff vs. Great North Railw. Co.*, 107 *Eng. C. L.*, 672. See also, *Limpus vs. Land, General Omnibus Co.*, 1 *Hurl. & Coll.*, 526 ; *Lovett vs. Salem and South Danvers R. R. Co.*, 9 *Allen*, 557 ; *Southwick vs. Estes*, 7 *Cush.*, 385 ; *Sandford vs. Eighth Ave. R. R. Co.*, 23 *N. Y.*, 343 ; *Seymour vs. Greenwood*, 7 *Hurl. & N.*, 355 ; *North. Cent. Railway Co. vs. State, use of Price, et al.*, 29 *Md.*, 422.

As to the undertaking by the defendant's agents in connection with the accident to Woodward, occurring on its road, to convey him to Frederick; if there was any duty on the appellant, or they were its representatives, and this we think must be admitted, and they undertook to remove him in his then condition, the appellant is liable under the law of bailment.

In the case of a voluntary undertaking to perform an act touching a matter in regard to which the party was under no duty to do anything, he is liable if he do it improperly. *Coggs vs. Bernard*, 2 *Ld. Raymond*, 909, 911 ; 1 *Smith's L. Cases*, 82 ; *McArthur & Hurlbert vs. Sears*, 21 *Wendell*, 190 ; *Morrison vs. Davis & Co.*, 20 *Pa. State*, 175 ; 2 *Hilliard on Torts*, 532 ; *Backhouse vs. Sneed*, 1 *Murphy*, 173 ; *Steamboat New World, et al. vs. King*, 16 *How.*, 474.

As to the plaintiff's bills of exception, the evidence sought to be offered, as set forth in her first one was admissible, as tending to charge defendant with knowledge of Thompson's negligence in attention to his duties; and the same remark applies to her second bill. It is no objection that particular instances were inquired after, and any evidence however slight should be given to the jury. *P. Fort Wayne & C. R. R. Co. vs. Ruby*, 38 *Ind.*, 294.

The ninth prayer of the defendant should not have been granted, because it assumes that the mere continuance of

a servant in the employ of a company with a general knowledge of its manner of running and equipping trains, is such an acquiescence as relieves the company from the duty of taking responsible care for the safety of its employés. Is it not the sounder view, that he takes such general risks on the ground that he shall be compensated in damages if injury should actually result from such default? The view contended for by defendant, and allowed by the Court below, virtually leaves the life and limb of a servant at the mercy of the cupidity or indifference to humanity of masters and corporations. Public policy is opposed to such a view of an employer's obligations.

It is true that English law has borne stringently against the servant, and these authorities have had their weight with us, but have been considered too illiberal in Scotland and in many of the States of the Union; and the tendency of decisions under the more benign and equal spirit of our institutions, is in the direction of greater immunity and protection to our laboring people, and a more rigid construction of the duties and liabilities of corporations. *Lou. & Nash. R. R. Co. vs. Collins*, 2 *Duvall*, 114.

MILLER, J., delivered the opinion of the Court.

Charles Woodward, a conductor of a freight train, had his leg crushed by a collision. The accident occurred on the appellant's road, at a point about one mile and a-half east of the Point of Rocks, and about four o'clock on the night of the 24th of September, 1869. His train was the second in a convoy of four going west, and was run into by the third and following train. The collision was slight, not displacing any of the cars from the track, and but little delay occurred in the movement of the trains. As soon as practicable, after the accident, he was placed on the tender of the nearest engine and carried to the Point of Rocks, accompanied and attended by Stoddard, the con-

ductor of another train, and his friend, who stopped with him at that station. As soon as he arrived there, the company's agent was aroused, his leg bound up with twine to stop the bleeding, a mattress procured, on which he was taken to a hotel, and stimulants administered to him. A messenger was immediately dispatched for the nearest physician, who came soon after, took off the twine, put on what is called a field tourniquet, bandaged the leg, and placed a board under it to keep it in position. At this time he had bled freely, and his pulse was feeble, but he subsequently rallied, and the physician stated he was in a fair way to recover, when he was put upon the next eastern bound passenger train to be taken to Frederick City, a distance of thirteen and a-half miles, where his relations and friends lived. This train arrived at the Point of Rocks sometime after seven o'clock of the same morning. He was placed in the baggage car, and the same party who had remained with him attended him on the transit to Frederick, where he arrived in about two hours. On his arrival he was in a dying condition from hemorrhage which occurred during the passage, and died shortly thereafter. This brief statement of the undisputed facts attending and following the accident, suffices for an understanding of the two distinct theories upon which the case appears to have been tried in the Circuit Court. These are:

1st. That there was such negligence on the part of the company as to make them responsible, upon the assumption that the injury received by the collision was fatal and the immediate cause of the death.

2nd. Assuming the injury was not in its nature fatal, and that the proximate cause of the death was the subsequent hemorrhage occuring during the transportation to Frederick, still the company is responsible, if such hemorrhage occurred by reason of the gross neglect of their agents or employés in charge of him during this transportation.

No embarrassing question arises as to the law governing the first ground upon which a recovery is sought. At the time of the collision the deceased was an employé of the company and in discharge of his duty as such. What is essential to make the employer responsible in such cases has been settled by the decisions of this Court. *O'Connell's Case*, 20 *Md.*, 212; *Wonder's Case*, 32 *Md.*, 411. The whole difficulty grows out of what occurred subsequently to the collision. What duty and obligation does the law cast upon the company as to the care and treatment of a party thus injured? It is contended that the rule in *Price's Case*, 29 *Md.*, 420, answers this question, and extends not only to the taking of the injured man to the Point of Rocks, and putting him in the care of a physician there, but also to the carrying of him to Frederick and placing him in charge of his friends in that city. The case of Price was that of a stranger to the company, who while crossing or on the track, near a station, was struck by the engine of a passing passenger train going at rapid speed, and carried upon the pilot for some distance before the train could be stopped. When found he was taken from the pilot apparently dead, though showing no external wound to justify the conclusion that life was in fact extinct. Without notice to his family or to any one who would take an interest in him, or sending for a physician to ascertain his condition, he was taken by those in charge of the train into a warehouse at the station, (a place used by the company to deposit old barrels and other rubbish,) and there laid upon a plank across some barrels and locked up alone all night. The next morning it was found he had, during the night, revived from his stunned condition, and moved some paces from the spot where he had been laid, and that he had died from hemorrhage of the arteries of his right leg which was crushed at and above the knee. It had been proposed to place him in the company's telegraph office which was a comfort-

able building, but the operator objected and directed him to be taken into this warehouse. In that state of case, we said that when the injured man was found upon the pilot of the defendant's engine in a helpless and insensible condition, "it, at once, became the duty of the agents in charge of the train to remove him, and to do it with a proper regard to his safety and the laws of humanity. And if in removing and locking up the unfortunate man, though apparently dead, negligence was committed whereby the death was caused, there is no principle of reason or justice upon which the defendant can be exonerated from liability. To contend that the agents were not acting in the course of their employment *in so removing and disposing of the party*, is to contend that the duty of the defendant extended no further than to have cast off by the wayside the helpless and apparently dead man, without taking care to ascertain whether he was dead or alive, or if alive whether his life could be saved by reasonable assistance timely rendered. For such a rule of restricted responsibility no authority has been produced, and we apprehend none can be found." Now we are of opinion that the rule of duty and responsibility thus laid down does apply to the present case, but that it extends only to the treatment of the deceased from the time of the accident until he reached the Point of Rocks, and what was there immediately done with and for him. But looking to the undisputed evidence in the record, we find the very opposite of what was done with Price, was done here. Woodward was not cast off by the wayside, at the place of the accident, and there left alone to bleed to death, nor thrown upon the platform of the station and there left to seek relief by himself as best he could. On the contrary, he was carried as speedily and safely as the circumstances would permit, to the nearest station, a place where it was most likely assistance could be most readily obtained, and when the station was reached the company's agents

took him in charge, did everything for his comfort they reasonably could, and used every precaution to stop the bleeding of his wounds and to save his life, that would naturally occur to unprofessional men of common information and experience. In the words of one of the witnesses, "we did the best we could to save him." They also sent immediately for a physician who arrived in a short time and took charge of him. Up to this time it is clear that everything that a "proper regard for his safety, and the laws of humanity," required was done in his behalf, and here, in our opinion, the company's duty and responsibility under the rule in *Price's Case* ceased. When he was thus attended to, and placed at a hotel in charge of a physician, no further responsibility under that rule, as to his care and treatment, rested upon the company. If they afterwards incurred any liability on account of negligence while carrying him to Frederick, it must be on other grounds and under a different principle of law. In our judgment, it is quite clear that at the time this transportation commenced, he could not be regarded as an employé of the company. Then, if not before, that relation was either suspended or had wholly ceased. By one of the company's rules, prescribing in this particular a lawful condition of his employment, he had no right to claim *compensation* from the company "when disabled by sickness or other cause," and any allowance they might make to him in such case was to be "as a gratuity only." He, therefore, in relation to this transportation occupied the position of a stranger to the company, in like condition. They were not bound to carry him gratuitously, nor to procure a physician or any one to accompany and attend to him on the way. The law imposes no obligation on railroad companies or other carriers of passengers, to furnish physicians, nurses, or other attendants for sick or disabled persons who may choose to travel in their conveyances. The duty to carry safely is no greater with respect

to them than with respect to those who are sound and in good health. Care and attendance of this character must be provided by the traveller at his own cost and risk. As to the correctness of these propositions there can, we think, be no doubt. But it is argued that whether they were under any obligation to carry him to Frederick or not, yet, having undertaken to properly attend to him until he could be delivered to his friends in that city, the company is liable for the consequences which would have been averted, but for the gross default or neglect of their agents and employés in carrying out that undertaking, upon the principle that if a party undertakes to perform an act in regard to which he was under no duty to do anything, and injury or loss results from the grossly negligent or improper manner in which he performs it, he is liable. We understand this argument to assume (as it must, to be of any avail in the present case) that if the jury find that the company, through some agent having authority to bind them to such an undertaking, undertook not only to carry Woodward from the Point of Rocks to Frederick free of charge, but also to *provide an attendant* to take care of him and carry out the physician's instructions in regard to his treatment while on the way, then the company is liable if his death was caused by the gross negligence or want of ordinary care on the part of such attendant. So understood, the argument places the liability upon the law of bailments, and the case of *Coggs vs. Bernard* and other authorities defining the duties and responsibilities of *mandatories* are cited in its support. This is certainly the only possible ground on which the company could be made liable, and whether it can be applied to the present cause and action may admit of grave doubt. Certain it is, that this is a question of great importance, and is attended with such difficulty, that no opinion upon it ought to be expressed by this Court unless it is clearly and directly presented for our determination, so that it can

be finally settled. But there is not a single exception or ruling in this record that thus presents it, and what we might say about it could be justly treated as mere *obiter dicta.* For this reason we deem it our duty to refrain from expressing any opinion upon the subject.

Having thus stated our views of the law governing the main features of the case as the record presents it, we must now dispose of the numerous exceptions taken at the trial. As the judgment must be reversed for errors in some of the rulings against the appellant, it is made our duty under a provision of the Local Laws, (2 *Code, Art.* 11, *sec.* 41,) to decide the exceptions taken by the appellee as well as those taken by the appellant.

In the appellee's first and second exceptions, the Court refused to allow the plaintiff to ask the witness, Thompson, the engineman of train No. 3, which caused the collision, whether he was ever before suspended by the company on the charge of negligence, and if yea, when? and whether his train ever ran into any other train, and if so, when, and where? In the appellant's first, second, and third exceptions, the same witness was asked by the plaintiff, whether, while in the service of the company, he was present in any accident in which his train caused loss of life, limb, or property, and if yea, when, where, and how often? And having stated he was off duty on one other occasion, he was asked "what for?" and further to state all the accidents in which his train was in any way connected, of which the company had knowledge. The plaintiff proposed to follow this up by showing that in the instances the witness might mention, there was negligence on his part which was brought to the knowledge of the company prior to the happening of the present accident. The Court allowed these questions to be put and answered. There may be, as was argued at bar, an inconsistency between these two sets of rulings. But this becomes immaterial in view of the testimony which the witness gave. He

testified in the progress of the cause, that he had been in the service of the company for very many years, first wiping off engines, then helping to repair them, then as fireman for five or six years, and that he was then promoted to running an engine, which he commenced to do about twelve years ago, and has ever since been so engaged; that on one occasion, a long time ago, a fireman fell off his train and was killed, and, with that exception, there was no other accident prior to this, causing loss of life, limb, or property, in which his train was in anyway connected; that on one occasion, also a long time ago, he was suspended for two weeks, because he failed to look at the list of engines put up at Mt. Clare, and this he explained by saying we were then runing irregularly, and it was hard to tell when we were to go out, that he thought he was not to go on the day he was required and was out of town. All this testimony went to the jury, and it is clear no injury was done to either party by the rulings in question; none to the plaintiff, because the questions of her counsel were fully answered, and none to the company, because the testimony given was altogether in their favor. Errors, if any, in these rulings, are consequently of no importance and furnish no ground of reversal. We have, however, been urged to decide the question presented by them, that is, whether it is competent in order to show that the company did not exercise due care in the employment or retention in their service of careful and skilful employés, to prove specific acts of negligence in one of them brought to their knowledge and his subsequent retention in their employment, or whether proof of general character only is admissible for that purpose? But there was no offer to prove by any other witness in opposition to the testimony of Thompson, that he had ever before committed any act of negligence in the running of his engine, and we have no assurance that any such proof can hereafter be procured. It appears, therefore, we are asked to decide a

mere abstract moot question, and we cannot step out of the line of duty to do that.

In the appellee's third exception the Court refused to permit the plaintiff to ask a witness "if the time between the trains had been ten instead of five minutes, by the regulations of the company, is it *as probable* that the accident would have occurred?" We do not perceive what relevancy an affirmative answer to this question would have had to the case. The true question is not what would have been *probable* if a different regulation as to time had been prescribed, but whether the actual regulation of an interval of five minutes at the schedule speed was a reasonable regulation with respect to the safety of the employés in charge of the trains. As to this no testimony was given or offered, and the jury could not be allowed, without any testimony of witnesses competent to speak on the subject, to take the time-tables and regulations, and pass their judgment on this question. If it depends on the construction and effect of these alone, it should be determined by the Court, and with regard to it we think there is no difficulty. According to the schedule speed on this part of the road, an interval of five minutes would keep the trains fully one mile apart. This, with the other rules respecting the use of lights and other signals and precautions, and prescribing the duty of employés in almost every emergency, would, if observed by them, render the occurrence of such accidents as this almost impossible. It certainly cannot be said that the time-tables in connection with such regulations, were not arranged by the company with such reasonable care and caution as to be consistent with a reasonable regard to the safety and well being of their employés. The rulings in this exception, and in the rejection of the appellee's second prayer on the same subject were correct. In this connection it has been argued that the time-tables require each of the trains running in convoys, to arrive at stations at the same time, and therefore,

necessarily require them to approach close to each other when coming to stations. But this we think, is a misapprehension of the true construction and effect of the time-tables in connection with the five-minute rule. The former fix the time for the arrival or departure of the foremost train, while the latter governs the running of the other trains throughout, as well upon approaching and leaving stations, as on other parts of the road. The testimony shows it was so understood and required to be practiced by the employés on such trains. The case is therefore quite different from that of *Wright vs. New York Central Railroad Co.*, 28 *Barb.*, 80, where the time-tables permitted trains approaching a station from *opposite directions*, and on the *same track*, to reach the station at the same moment.

In the appellee's fourth exception the Court refused to allow the plaintiff to ask the witness, Thompson, for the purpose of laying the foundation *for impeaching him*, whether he had not made a certain statement to another party different from what he had testified to when under examination by the defendant. This witness had been called by the plaintiff in the first instance and had given testimony as to when, where, and how the collision had occurred, and as to other matters connected with the accident. In this state of case we are of opinion it was not competent for the plaintiff at any stage of the trial, or of his examination to *impeach the credibility* of this witness. The general rule on this subject, with the exceptions to it, is very clearly stated in 1 *Greenleaf's Evidence, secs.* 442, 443, 444. We refer also to *Queen vs. The State*, 5 *H. & J.*, 232, and *Franklin Bank vs. Steam Navigation Co.*, 11 *G. & J.*, 36, where questions very similar to the one before us have been decided by our predecessors. There was no error in this ruling.

In the appellant's fourth, fifth, sixth and seventh exceptions, the Court overruled the defendant's objections to the

admissibility of certain evidence, and permitted it to go to the jury. In the fourth, fifth and sixth, several physicians were asked their medical opinions as to the prudence of removing a man injured as Woodward was, from the Point of Rocks to Frederick, and they testified it would have been better to have kept him quiet at the former place, and if he had been their patient they would have insisted on his remaining there and not have permitted his removal.

In the seventh, one of the same witnesses was asked, upon a hypothetical statement of the case, to what cause he would have attributed Woodward's dying condition when he reached Frederick, and he said to the neglect, inattention, or ignorance of the persons in charge of him. The objection now made to the admissibility of all this testimony, is that there is no averment in the declaration, nor specification in the "particular" of the claim furnished under the 3rd section of Art. 65 of the Code, which would authorize its admission. We are of opinion, this objection, so far at least, as the testimony in the seventh exception is concerned, is well taken. This testimony supports the second branch or theory of the case. Its object was to charge the company with negligence in the carrying of Woodward to Frederick, and to show that that negligence was the cause of his death. By a fair reading of the declaration it charges simply that Woodward, while lawfully on one of their cars, *was killed* through the wrongful act, neglect and default of the defendant, and the "particular" of the claim furnished under the statute, has no broader scope. It states that Woodward, while lawfully on one of the defendant's cars as conductor of a freight train, was, by reason of the wrongful act, neglect, and default of the defendant "*struck* and *injured* by a locomotive engine of the defendant, and *in consequence* of being so struck and injured afterward" on the same day "died." They both aver that the death was the necessary result of the injury, and make no claim that the subsequent negligence in the

transportation to Frederick, was the proximate cause of it. The section of the Code referred to requires the equitable plaintiff, together with his declaration, to deliver to the defendant or his attorney, a " full particular of the *nature of the claim,* in respect of which, damages shall be sought to be recovered." When furnished, its office and effect is, like that of a bill of particulars in other cases, to restrict the plaintiff's proof, and limit his recovery to the claim as therein stated. *Hall vs. Sewell,* 9 *Gill,* 155 ; *Scott vs. Leary,* 34 *Md.,* 400. It follows that in order to admit the testimony objected to, there must be an amendment of the declaration and "particular" of claim. But it is said, no such point was made or decided in the Court below, and therefore, this Court cannot entertain this objection. The Act of 1825, ch. 117, embodied in the Code, (and in this particular it has not been changed by subsequent legislation,) provides, that "the Court of Appeals shall in no case decide any point which *does not appear by the record* to have been tried and decided by the Court below." Among the numerous instances in which that Act has been construed by the Appellate Court, it has been frequently held that where an objection is raised to the admissibility of evidence offered generally in a trial before a jury, the attention of the Court is necessarily called to the pleadings in the cause, as the admissibility of the evidence is entirely dependent on them, and the Court cannot judge of its pertinence or materiality, but by reference to them. When the record shows such an objection was made and overruled or sustained by the Court below, this Court must assume the testimony was admitted or rejected by that Court, because it was pertinent and relevant, or otherwise to the issue made by the pleadings. In such case, it necessarily appears by the record that the point was decided by the Court which tried the cause. The distinction between such an objection and that of prayers or instructions to the jury which make no reference to the pleadings, is very clearly

stated in the case of *Leopard vs. Canal Company*, 1 *Gill*, 222. Counsel for the appellee have also argued that no harm was done by admitting the testimony in the fourth, fifth and sixth of these exceptions, because it was not sought to hold the company responsible for the imprudence of removing Woodward, and no claim is made for damages on that account. We agree the company could not be made liable for such imprudence, nor for any mistaken opinion on that subject by the medical attendant at the Point of Rocks, who may have advised or consented to such removal. But then the testimony becomes wholly irrelevant, and for that reason was improperly admitted. We are therefore of opinion there was error in each of these exceptions.

By the custom and regulations of the company, trains in convoy were equipped, each with one engineman, one fireman, one conductor, and one brakeman. If Woodward had knowledge of this custom and practice at the time of his employment and afterwards, and with such knowledge, continued for eight or nine months in his employment as conductor on trains in convoys thus equipped, and also knew that Thompson's train following his on the night of the collision was equipped in the same manner, then such knowledge on his part would prevent a recovery in this action, on account of any supposed deficiency in equipment in this respect. Hence the Court was right in rejecting the appellee's first, and in granting the appellant's ninth prayer, which refer to that subject.

There was no error in granting the appellant's first prayer. It correctly states what was essential in order to fasten liability upon the common employer. The appellant's second prayer, as we understand it, is, and must be confined to the first theory of the case. It asserts in effect, that if the jury find that Woodward *died from the injury he received by the collision*, (that is, if they find such injury was fatal,) and was occasioned by the negligence of the engine-

man of the following train, then their verdict must be for the defendant, because the plaintiff has offered no evidence that the defendant did not exercise all reasonable care in the selection of its servants, or in procuring for its operations faithful and competent employés. After a careful examination of all the evidence in the record, we find none legally sufficient to authorize the jury to find a verdict against the company on the first branch of the case. There was consequently no error in granting this instruction, nor in rejecting the appellee's third and fourth prayers. Besides this, each of the appellee's first four prayers assert the right to recover upon the hypotheses of facts therein stated, without reference to the question of contributory negligence on the part of Woodward (a most important element of the case in view of the testimony on that subject,) and for this reason were all properly rejected. Again, if there was negligence on the part of Woodward, it must, from the nature of the accident have concurred and co-operated in producing the injury, and in that case the law will not permit an apportionment of negligence. *Northern Central Railway Co. vs. State, use of Geis,* 31 *Md.,* 357. For this reason, if there were no other objection to it, the appellee's fifth prayer was rightly refused.

The appellee's sixth and seventh prayers are disposed of by what we have already said. The sixth is in the exact terms of one of the instructions approved in *Price's Case,* and the seventh adopts the language of the Court in that decision. Each of them applies the rule ·in that case to this without restriction. It in effect, instructs the jury, that it was the duty of the company's agents and servants under the rule there announced, to take charge of, and carry the injured man, not only to the Point of Rocks, but from thence to Frederick city. We have expressed our views on that subject, and for the reasons stated there was error in granting these prayers and none in rejecting the

appellee's ninth and the appellant's third prayer. This latter prayer also erroneously assumes that the relation of employer and employé continued during the transportation to Frederick.

The appellant's fourth prayer is very nearly correct. The only objection to it is, that it does not put to the jury with sufficient point and distinctness to find that Stoddard accompanied and attended Woodward at the latter's request, or was allowed to go and take care of him because of such request. If the company's agents, at his request carried or permitted Woodward to be carried on this train to Frederick free of charge, or acceded to such request from motives of kindness, or because he had been injured while in the company's employment, *and also* permitted Stoddard to accompany him, and attend to him, because Woodward had requested him as his friend to do so, it is quite clear the company could not be held responsible for Stoddard's negligence, for in that case he was Woodward's own attendant, and not the company's servant. Modified as indicated, this prayer would announce a correct legal proposition.

The appellee's eighth prayer, which was granted, correctly states the measure of damages. The appellant's fifth, sixth, seventh and eighth prayers were rightly refused. Each of them asserts that certain acts and conduct of Woodward amounted in *law* to contributory negligence. This is not, in our opinion, a case in which the Court would be justified in interfering in this way, but one in which the question of such negligence should be left to the finding of the jury, upon all the facts and circumstances in evidence before them. Besides, as we have decided that the plaintiff has failed to prove any negligence on the part of the company warranting a recovery on the first theory of the case, any instruction upon this dependent and subordinate defense of contributory negligence on the part of the deceased, would have been entirely

unnecessary, if not inconsistent with the Court's previous instructions in granting the appellant's second prayer.

For the errors above stated in the rulings against the appellant the judgment must be reversed and a new trial awarded.

*Judgment reversed, and*
*new trial awarded.*

(Decided 12th January, 1875.)